UNITED STATES of America, Appellee,

v.

Joseph R. PFEIFFER et al., Appellants.

No. 76–1153.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1976.

Decided Aug. 16, 1976.

Charles L. Merz, St. Louis, Mo., for appellants.

Richard Coughlin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J. Stohr (former U. S. Atty., Barry A. Short, U. S. Atty., effective May 15th), and David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and HENLEY, Circuit Judges.

LAY, Circuit Judge.

The defendant, Joseph R. Pfeiffer, was convicted of possession of goods (12 Goodyear tires valued in excess of $100.00 which had been stolen from a shipment moving in interstate commerce), knowing such goods to have been stolen, in violation of 18 U.S.C. § 659. He appeals on two grounds: that the trial court erred (1) in admitting verbal and documentary hearsay concerning the shipment receipt of the tires, and (2) in limiting cross-examination of a government witness. We affirm.

An essential element of the government's proof was that the tires allegedly possessed by the defendant were part of a stolen shipment. The manufacturer's serial numbers which appeared on the tires allegedly possessed by the defendant corresponded with the numbers on tires shipped from the Gadsden, Alabama Goodyear plant to one of five cities during the 44th week of 1975. As part of its proof the government showed that the allotment of tires manufactured that week at the Gadsden, Alabama plant had reached various destinations in the United States and Canada and that the only unaccounted for tires were those sent to the General Motors plant in St. Louis. The truck allegedly carrying the St. Louis tires was stolen from the Superior Forwarding Co. in St. Louis and found empty and abandoned nearby on November 9, 1975, two days after it had left Gadsden, Alabama. The defendant urged at trial that the government failed to prove that the tires in his possession were the same ones shipped from the Alabama plant to St. Louis and subsequently stolen.

■ Complaint is made of certain rulings concerning the admissibility of the evidence relating to the receipt of tires at the four destinations other than St. Louis. Specifically the defendant objects to the admissibility of the testimony of H. F. Medlin, traffic manager of the Goodyear Tire & Rubber Co. at Gadsden, Alabama. Medlin testified that he had received *no* notification that the other four plants to which shipments were made during the week in question had *not* received their shipment of tires. Defendant urges that this is indirect hearsay.

Assuming *arguendo* that the testimony was erroneously admitted, we fail to see any prejudice to the defense. Subsequent to this testimony the government produced the actual delivery receipts transmitted to Goodyear from those four customers through regular business channels and maintained under the supervision of Medlin in the regular course of business. These records verified the receipt of tires by the other four plants. In addition there was corroborative evidence showing that the tires bearing the serial number in question were shipped on the hijacked truck to St. Louis. The shipping orders found in the truck, a copy of which was maintained in Medlin's file in Alabama, verified that tires bearing the serial number in question were shipped by the Gadsden plant to St. Louis. The shipping orders contained the description of the tires and General Motors' production code.

■ Defendants assert that these delivery invoices were not properly admitted as business records under Fed.R. of Evid. 803(6)[1] because there was no foundation

---

1. Rule 803(6) of the Federal Rules of Evidence reads:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

.    .    .    .    .

(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if

laid by persons having knowledge of the preparation of the receipts. This claim has no merit. The reason for excluding business records from the hearsay rule is their circumstantial guarantee of trustworthiness. It is not necessary under the new federal rules of evidence that the declarant be present if the knowledge of the custodian of the record demonstrates that a document has been prepared and kept in the course of a regularly conducted business activity.[2] *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence 803(6)[02] (1975). According to Medlin these invoices were delivery receipts which were prepared from the Goodyear bill of lading by the common carrier taking the shipment away from the Gadsden plant. He stated that the carriers got paid on those freight bills, so they had to be correct in the weight and number and pieces, the freight charges, and the bill of lading number shown on that document. The common carriers who prepared the delivery receipts and transmitted them to Goodyear did so in the regular chain of business activity and cannot be called "non-participants." Goodyear relied on these records prepared by other companies. Although Medlin had no actual knowledge about the circumstances surrounding their preparation, he was familiar with these

shipping invoices and the same delivery slips were checked by Medlin against Goodyear's bills of lading for accuracy and proper freight payments. Medlin was familiar with all of these procedures and the records demonstrate a circumstantial guarantee of trustworthiness.[3] Furthermore, even if the persons preparing the receipts were considered non-participants, the trial judge has discretion in admitting the evidence if it otherwise is trustworthy. *See* Fed.R. of Evid. 803(24) and 804(b)(5). We find no error here.

*Cross-examination.*

■ Donald Smith was the accomplice who pleaded guilty and then pointed the finger of guilt at the defendant. The defendant now complains that he was not allowed to cross-examine Smith as to his "state of mind" when he suddenly changed his plea at the time of trial and testified for the government against Pfeiffer. We agree that counsel should be given wide latitude in the cross-examination of witnesses in areas affecting credibility.[4] However, a fair reading of the record reveals no prejudice to the defendant. Counsel, through difficult persistence, was able ultimately to ask his questions and receive whatever answer Smith was willing to give.

---

kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**2.** It has long been held that the absence of the person who prepared the exhibits goes to the weight to be given the evidence and not its admissibility. *See United States v. Morton,* 483 F.2d 573 (8th Cir. 1973); *United States v. Bass,* 472 F.2d 207 (8th Cir. 1973).

**3.** For cases with similar factual circumstances see *United States v. Merry,* 514 F.2d 399 (8th Cir. 1975), citing *Ashley v. United States,* 413 F.2d 249 (5th Cir. 1969); and *United States v. Olivo,* 278 F.2d 415 (3d Cir. 1960).

**4.** In *Farkas v. United States,* 2 F.2d 644, 647 (6th Cir. 1924), it was stated:

Concededly promises of immunity are admissible; they are, however, rarely made. Inasmuch as the question involved is the motive for testifying falsely and therefore the state of mind of the prosecuting witnesses, the relevant evidence is not alone the acts or attitude of the district attorney but anything else that would throw light upon the prosecuting witnesses' state of mind. It is therefore entirely proper, either by cross-examination of the witness himself, or otherwise, to show a belief or even only a hope on his part that he will secure immunity or a lighter sentence, or any other favorable treatment, in return for his testimony, and that, too, even if it be fully conceded that he had not the slightest basis from any act or word of the district attorney for such a belief or hope.

*See also Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Harris,* 501 F.2d 1 (9th Cir. 1974).

The record reveals that defense counsel in final argument attacked Smith's credibility based on the answers he received. We do acknowledge that the written record does not fully reveal the alleged frustration of counsel when continuous interruptions on cross-examination are made by the trial court and opposing counsel.

Although the trial court has the obligation to see that an orderly trial is conducted and may properly restrict cross-examination when it becomes abusive or goes off on immaterial tangents, the court must at the same time exercise proper restraint and not be unduly restrictive. As recently stated in *United States v. Harris*, 501 F.2d 1, 9 (9th Cir. 1974):

> It is essential, when the witness' credibility is critical to the Government's case, that defense counsel "be given a maximum opportunity to test that credibility by exploring the witness' motivation for testifying." (quoting from) *United States v. Rodriguez*, 439 F.2d 782, 783 (9th Cir. 1971).

In most instances we feel the court should allow counsel great latitude, particularly when cross-examination is directed at the credibility of key adversary witnesses. Here, we find the questions to which the court sustained objections were in fact proper questions and we agree that it would have been better if the trial would have progressed orderly and without interruptions. If it had done so, one alleged error on appeal would have been obviated.

We affirm the judgment of conviction.