**Frank WEALOT, Petitioner,**

v.

**Bill ARMONTROUT, Respondent.**

No. 88–1269–CV–W–3–P.

United States District Court, W.D. Missouri, W.D.

March 12, 1990.

Frank Wealot, Jefferson City, Mo., pro se.

Steve Hawke, Missouri Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

■ Before the Court is petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. A jury convicted petitioner on December 10, 1986, of forcible rape for which the trial court sentenced him to thirty years confinement. In a per curiam opinion, the Missouri Court of Appeals affirmed his conviction on December 8, 1987. 745 S.W.2d 690. The Court of Appeals also denied his motion for a transfer in forma pauperis to the Missouri Supreme Court. Petitioner challenges his conviction on sixth and fourteenth amendment grounds,[1] claiming he was denied the

---

1. The State has challenged the Court's jurisdiction over this application on the grounds that the petitioner has failed to allege a constitutional violation. In his traverse, however, petitioner identified the constitutional bases of the present motion. In addition, Federal Rule of Civil Procedure 8(f) requires that "[a]ll pleadings shall be so construed as to do substantial justice." The constitutional bases of petitioner's claims touching upon cross-examination of

right to fully cross-examine certain state witnesses.[2]

## I.

According to the testimony of Sandra Morris, she was raped at knife-point by a male intruder who had broken into her apartment during the early morning hours of May 31, 1986. After her boyfriend, Larry Morris, left for work around 12:30 a.m., she fell asleep in her bed with her two-year-old son, Timothy. Trial Transcript (hereinafter "Tr.") at 5, 7. The next thing she remembered after falling asleep was a man shaking her, telling her to get out of bed. Tr. at 8. He asked her if she had any money, a question he repeated three or four times during the rape and to which she responded, "No." Tr. at 8–9. The intruder then forced Ms. Morris and the child to go into the living room where he told her to perform oral sex upon him, and she "begged him" and told him she did not want to do it. Tr. at 10. Apparently he changed his mind because he next told her to take off her clothes, and he put her on the sofa and raped her with the child standing nearby, crying. Tr. at 10–11, 15. After the rape, he ordered her to go back to her bedroom. Tr. at 15. He pulled the bedroom door shut and told her not to come out. Tr. at 16. She then called the police from her bedroom. Tr. at 16.

After the police arrived, Ms. Morris discovered that the screen of the large kitchen window next to the kitchen door had been slashed and that someone had passed through the screen. Tr. at 12. The window in the kitchen door had also been broken, and the knife that the intruder carried was later identified as one from Ms. Morris' kitchen. Tr. at 8, 12–13, 55.

Ms. Morris testified that the attacker talked to her "off and on" during the time he was raping her. Tr. at 16. She testified that she recognized the assailant by his voice, and that her assailant was Frank Wealot, though she had never previously talked with the defendant and had formerly heard his voice only when Mr. Morris greeted him on passing by. Tr. at 41–44. Ms. Morris also said that her attacker was wearing blue jeans, slippers, no shirt and a nylon stocking over his head. Tr. at 17. Thus, Ms. Morris' identification testimony was critical to the case.

Petitioner's defense was two-fold: he presented an alibi and he attacked the credibility of Sandra Morris. By convicting petitioner, the jury obviously chose not to believe his alibi evidence. In addition, despite the efforts of counsel to undermine her testimony, the jury chose to believe Sandra Morris. The jury had to have relied virtually exclusively on her testimony because there was no physical evidence that Ms. Morris had engaged in sexual intercourse with anyone, despite the fact that she was apparently examined within a reasonably short period after the rape. Tr. at 19, 82–90, 110. Indeed, the prosecution was unable to produce any physical evidence that would link the petitioner in any way to Sandra Morris. Tr. at 82–90, 152–56. All of the State's witnesses other than Sandra Morris gave corroborative testimony; only Ms. Morris' testimony directly implicated petitioner. Accordingly, as in many rape cases, the jury had to have given great weight to the testimony of the victim, Sandra Morris.

Defense counsel exposed significant inconsistencies in Ms. Morris' testimony. For example, Ms. Morris did not identify petitioner as her attacker when she first spoke to the police. Tr. at 113–15. She told the police that her attacker was approximately "the same size as Frank Weal-

prosecution witnesses were clear on the face of the petition. Moreover, to construe the petition as stating constitutional claims is not to construe it "beyond the claim that was considered by the state trial court." *Tran v. Lockhart,* 849 F.2d 1064, 1069 (8th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1561, 103 L.Ed.2d 863 (1989). Petitioner's failure to cite to particular provisions of the Constitution neither prevented the State from addressing the merits of the

claims, as evidenced by the State's Response, nor does it deprive this Court of jurisdiction.

**2.** Petitioner also challenges the trial court's admission of certain rebuttal testimony. Because of the Court's disposition of petitioner's sixth amendment claim, it is unnecessary to address this claim.

ot," who is five feet, five inches tall, but she also said that her attacker was five feet, ten inches tall. Tr. at 113–15. Moreover, it was early in the evening on May 31 after Ms. Morris had seen petitioner in slippers and after she had him arrested that she first mentioned the slippers to the police and first stated that her attacker was five feet, five inches tall. Tr. at 57, 115, 158. Similarly, while Ms. Morris testified at trial that her attacker had a high pitched voice, that was a characteristic she never mentioned to the police. Tr. at 45–46, 73–74. She also failed to notice petitioner's tatoos which were apparently quite noticeable. Tr. at 35–38, 67. Her testimony as to whether her assailant ejaculated is likewise very inconsistent. Tr. at 58–59, 71–72, 77–78.

Defense counsel contended that Ms. Morris had a strong motive for giving false testimony against the petitioner. Petitioner offered to show that Larry Morris regularly locked Ms. Morris in their apartment and that she was unable to leave the apartment. Tr. at 61–65. On a few other occasions she had even "called begging people to come let her out." Tr. at 62. Petitioner wanted the jury to consider the possibility that Ms. Morris had slashed the screen and had broken the window herself. However, on cross-examination of both Sandra and Larry Morris, defense counsel was not permitted to inquire into whether Mr. Morris regularly locked Ms. Morris in the apartment. Tr. 98–99.

Counsel also wanted to inquire into whether Mr. Morris was jealous of and physically abusive of Sandra Morris. Tr. at 51–55, 104–05. Although counsel proposed some other reason for this line of inquiry after the trial court ruled against permitting inquiry into the regular lock-ups, petitioner argues that counsel originally intended to propose that Ms. Morris slashed the window screen herself to escape from the apartment and then broke the kitchen door window to get back inside. Fearing retribution from her jealous, abusive boyfriend, she fabricated the rape story. Finally, to convince Larry Morris that she had not concocted the story, she felt compelled to identify her assailant and help obtain his conviction, especially because Mr. Morris was already accusing other people. Tr. at 51–55. Ms. Morris said her boyfriend "wanted to put the blame on somebody else that [she] knew didn't do it." Tr. at 51.

The State argues, as it did in the state courts, that the "lock-up" testimony was irrelevant, collateral, "highly prejudicial," and would confuse the jury. Tr. at 54, 61–65, 98. Defense counsel countered that the "lock-up" testimony and the testimony that the boyfriend was jealous and abusive "has everything to do with her motive, why she's testifying." Tr. at 54, lines 10–11. "It goes to her motive as to why she accused somebody else, because she's trying to shift the blame." Tr. at 53, lines 20–22. Despite its apparent direct relevancy and the lack of any articulation by the prosecution or the trial court as to how the testimony would prejudice or confuse the jury, the trial court sustained the State's objections.

The State's only physical evidence in the case was consistent with the disallowed defense theory. The slashed window screen was pushed outward, indicating that someone had passed through it from the inside going out. Tr. at 110, 120. The glass broken out of the kitchen door was scattered on the kitchen floor indicating that it had been broken from the outside. Tr. at 110, 117. Thus, to believe that petitioner had done both things would mean that he entered through the window in the door, but then exited through a different window after slashing the screen and pushing through it. Petitioner's argument at trial and before this Court is that his theory is at least as plausible an interpretation of the evidence as the State's theory. Tr. at 63. He insists that the restrictions placed on his cross-examination of Sandra and Larry Morris prevented him from offering to the jury his theory—strengthened by Ms. Morris' inconsistent stories and corroborated by the physical evidence—in violation of the sixth and fourteenth amendments.

## II.

■  Before a petitioner may obtain federal habeas corpus review of his state conviction or sentence, Congress has required that he first "exhaust" his federal claims in the appropriate state courts. 28 U.S.C. § 2254(b), (c) (1982).[3] A petitioner has exhausted his claim either: 1) if he has "fairly presented the federal constitutional dimensions of his federal habeas corpus claim to the state courts"; or 2) if there are "no currently available, non-futile state remedies through which he can present the federal constitutional dimensions of his claim to the state courts." *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1987), *aff'd*, 863 F.2d 1377 (8th Cir.1988) (en banc), *cert. denied*, — U.S. —, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989).[4] "The purpose of the fair presentation component of the exhaustion requirement is to give the state courts the first opportunity to review federal constitutional issues and to correct federal constitutional errors made by the state's trial courts." *Id.* "Fair presentation" requires that the petitioner

"inform the state court of both the *factual and legal* premises of the claim he asserts in federal court." *Id.* (quoting *Dave v. Attorney General of State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc)).

■  On the other hand, "when the source of a claim is apparent, a criminal defendant does not waive his constitutional claim simply because his counsel does not cite the constitution by chapter and verse." *Don v. Nix*, 886 F.2d 203, 206 (8th Cir. 1989). A citation to a federal case predicated on federal constitutional law is sufficient to fairly inform the reviewing state court of the potential federal claim.[5] *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir.1988) (the petitioner must refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue); *Morrow v. Wyrick*, 646 F.2d 1229, 1232 (8th Cir.) ("petitioner's basic argument [before the state appellate court] that the introduction of the challenged testimony deprived him of the right

**3.** Those subsections state in relevant part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state....

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

**4.** A petitioner need present his constitutional claim only once to the state courts. Thus, if he properly pursues his claims throughout the entire direct appellate process of the state following his conviction, he has satisfied the exhaustion requirement. *Mucie v. Missouri State Dept. of Corrections*, 543 F.2d 633, 636 (8th Cir.1976) ("The exhaustion doctrine requires only that the state courts have one full and fair opportunity to decide a question which is properly presented to it."). *See generally*, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 5.3(b) at 46 (1988).

**5.** Incidentally, Missouri procedural rules would not prohibit an appellate court from addressing claims that are obliquely presented. Missouri Supreme Court Rule 30.06(d) requires the "points relied on" in appellate briefs to state

"wherein and why" the actions or rulings of the trial court are erroneous. Even if a state prisoner's brief fails to state the "wherein and why" of the trial court's constitutional error, the state appellate court may, in its discretion, overlook the procedural deficiency and address the constitutional issues on their merits. *See, e.g., State v. Sloan*, 756 S.W.2d 503, 505, n. 2 (Mo.1988) (en banc) ("While it is apparent that the point does not state 'wherein and why' the trial court erred, appellant's arguments make clear the grounds for alleged error. Since it is this Court's policy 'to decide cases on the merits whenever possible' and to avoid 'punish[ing] innocent parties for the shortcomings of counsel on appeal,' ... particularly in criminal cases, we treat appellant's point of error as if properly raised."); *State v. Petterson*, 780 S.W.2d 675, 677 (Mo.Ct.App.1989) ("While appellant attempted to comply with Rule 30.06(d), the points and authorities presented in appellant's brief often are not clear or concise. With the acknowledgement of this difficulty, we proceed with our review."). Thus, while a claim may not have been presented in accordance with Rule 30.06(d), the claim nevertheless may have been "fairly presented" for federal habeas purposes. *See Morrow v. Wyrick*, 646 F.2d 1229, 1231 (8th Cir.) (failure to comply with Missouri state appellate court rules does not mean that constitutional issue was not fairly presented to the state court), *cert. denied*, 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981).

to confront and cross-examine witnesses is discernible"), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981); *Graham v. Solem,* 728 F.2d 1533, 1535 (8th Cir.) (en banc) ("Citation to a provision of the federal constitution or a case addressing the constitutional basis of the claim, or a discernible reference to a federal constitutional right is all that is normally required"), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).

■ In the present case, the State has cautiously acknowledged that petitioner's "present claims" are exhausted. The State contends, however, that if petitioner "has different theories [than those presented to the state courts] to support his present claims, then those claims have not been exhausted." Response at 2. On the other hand, the State alleges that any new theories or claims that petitioner may have are now procedurally barred in the state courts under Missouri Supreme Court Rule 29.15.[6] The State simply cannot have it both ways. If petitioner's claims are procedurally barred in state court, then they are "exhausted" because pursuing those claims in state court would be a futile gesture. Therefore, all of petitioner's claims are "exhausted" for federal habeas corpus purposes, either because they were fairly presented to the state courts or because

petitioner no longer has a non-futile state remedy through which he can present the federal constitutional dimensions of his claim to the state courts. The appropriate inquiry is, instead, whether petitioner has preserved his claims for federal habeas corpus review.

If it is true that petitioner failed to present his federal claims to the state courts on direct appeal, they would now be procedurally barred as discussed, *supra,* note 6. Consequently, the Court must first determine whether the petitioner fairly presented his constitutional claims to the state courts. The State conclusorily asserts that petitioner did not advance his constitutional claims in the trial court, on direct appeal or before the Missouri Supreme Court. Response at 2–3, 7. This Court disagrees.

■ Petitioner Wealot fairly put the constitutional questions regarding the trial court's severe limitations on cross-examination of the victim and her husband into issue before the state courts by citing two federal circuit opinions, *United States v. Pfeiffer,* 539 F.2d 668 (8th Cir.1976) and *United States v. Harris,* 501 F.2d 1 (9th Cir.1974). In his motion for a new trial and in his appellate brief,[7] petitioner cited *Pfeiffer* which quoted *Harris* as follows:

6. The time for petitioner to assert the present claims under Missouri Supreme Court Rule 29.-15 has long been expired. The rule provides that:

> If sentence is pronounced prior to January 1, 1988, and no prior motion has been filed pursuant to Rule 27.26, a motion under this Rule 29.15 may be filed on or before June 30, 1988. Failure to file a motion on or before June 30, 1988, shall constitute a complete waiver of the right to proceed under this Rule 29.15.

Missouri Supreme Court Rule 29.15(m). Petitioner never filed a Rule 27.26 motion and his conviction was prior to January 1, 1988. Therefore, his failure to file a motion under Rule 29.15 before June 30, 1988, constitutes a waiver of the right to proceed under that rule.

Arguably, a prisoner may now be able to petition a state court for a writ of habeas corpus. In *White v. State,* 779 S.W.2d 571, 572–73 (Mo.1989) (en banc), the court intimated that Rule 29.15, unlike the former Rule 27.26, may not subsume the writ of habeas corpus. Although *White* primarily involves Rule 24.035, the rule providing for post-conviction relief

from guilty pleas, the Court does allude to Rule 29.15 and leaves little doubt that the two rules would be treated similarly. *Id.* at 573. A petitioner's failure to properly pursue a claim under Rule 29.15 would probably constitute a procedural default that would preclude state habeas relief unless the petitioner could establish "at a minimum ... that the grounds relied on were not 'known to him.'" *Id.* at 572. Thus, even if Missouri courts will now entertain petitions for the writ of habeas corpus, this petitioner's failure to file a Rule 29.15 motion would be a procedural bar to habeas relief in the state courts. However, as discussed *supra,* note 4, a petitioner's failure to seek state post conviction relief is not a bar to federal habeas relief if the petitioner has pursued his claims throughout the entire direct appellate process.

7. The State also contends that petitioner abandoned the present claims because they were not raised in the motion for transfer to the Missouri Supreme Court. The motion to transfer was essentially a one paragraph request to transfer the case. *See* Respondent's Exhibit F. The motion to transfer was denied, and the case was

It is essential, when the witness' credibility is critical to the government's case, that defense counsel "be given maximum opportunity to test that credibility by exploring the witness' motivation for testifying."

*Pfeiffer,* 539 F.2d at 672 (quoting *Harris,* 501 F.2d at 9). If the *Pfeiffer* court's failure to mention the sixth amendment leaves any doubt that it was discussing the sixth amendment right to cross-examine, the court's citation to *Harris* eliminates all doubt. In *Harris* the court unequivocally

stated that "the right of an accused to cross-examine the witnesses against him is embodied in the confrontation clause of the Sixth Amendment." 501 F.2d at 8. Petitioner's citations to these cases were more than sufficient to alert the state courts to the federal constitutional claims.[8]

Finally, the State's contention that the constitutional dimensions of petitioner's claim were not presented to the state courts is simply disingenuous. In its own brief before the Missouri Court of Appeals,

---

never fully briefed for the Missouri Supreme Court.

In *Faust v. Jones* 662 F.Supp. 221, 222–23 (W.D.Mo.1987), this Court held that even failure of a state prisoner to *seek*—much less articulate the grounds for—the transfer of an unsuccessful appeal from the Missouri Court of Appeals to the Missouri Supreme Court is not a procedural default. *See Fisher v. Trickey,* 656 F.Supp. 797 (W.D.Mo.1987) (holding that failure to file a motion to transfer from a Missouri Court of Appeals to the Missouri Supreme Court does not constitute a failure to exhaust). Had the motion to transfer been granted, under Missouri Supreme Court Rules 83.04 and 83.08 the briefs filed in the court of appeals would have constituted the briefs in the Missouri Supreme Court. The fact that the Missouri Supreme Court chose not to grant the motion to transfer and that the appellate briefs were therefore not considered by that court does not mean that petitioner "abandoned" his claims. Petitioner did everything necessary to preserve his claims for review by the supreme court had it chosen to hear the case.

**8.** Additionally, a criminal defendant's right to cross-examination has long been recognized as "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068–69, 13 L.Ed.2d 923, 927 (1965). The petitioner's mere suggestion that the right to cross-examine was unduly restricted is assuredly sufficient "to call to mind a specific right protected by the Constitution" and constitutes an allegation of fact "that is well within the mainstream of constitutional litigation." *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Whenever a criminal defendant complains of the restrictions placed on the scope of his cross-examination of prosecution witnesses, the sixth amendment—not just state law—is necessarily implicated.

There is some question as to whether the Eighth Circuit will follow *Daye.* While *Thomas v. Wyrick,* 622 F.2d 411 (8th Cir.1980), *cert.*

denied, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983), requires a petitioner to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue, *Graham v. Solem,* 728 F.2d at 1537 (8th Cir.) (en banc), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984), clearly broadened *Thomas* sufficiently to accomodate the common sense rule of *Daye.* In *Graham,* the court en banc wrote:

Citation to a provision of the federal constitution or a case addressing the constitutional basis of the claim, or a discernible reference to a federal constitutional right is all that is normally required. In making this assessment, we must bear in mind that state courts, as co-equal guardians of constitutional rights, are able to recognize federal constitutional issues even when no explicit reference is made to the federal constitution.

*Id.* at 1535–36 (citations omitted). Nevertheless, the panel in *Purnell v. Missouri Department of Corrections,* 753 F.2d 703, 708 (8th Cir.1985), was inexplicably equivocal about the effect *Graham* has on *Thomas,* though it conceded that *Graham* may have broadened *Thomas* "so that *Daye* is consistent with it."

It is simply impossible to explain the opinion in *Kelly v. Trickey,* 844 F.2d 557 (8th Cir.1988), which disapproved of the *Daye* test, despite repeated references to *Daye* in previous Eighth Circuit cases. The *Trickey* court assumed without discussion that *Daye* is inconsistent with *Thomas.* Moreover, the court did not address itself to the Eighth Circuit cases which had either followed *Daye* or declined to find *Daye* inconsistent with the approach of *Thomas. See, e.g., Tyler v. Gunter,* 819 F.2d 869, 870 (8th Cir.1987) (applying the *Daye* standard); *Martin v. Solem,* 801 F.2d 324, 331 (8th Cir.1986) (applied *Daye,* since the result was the same under either test, though the court noted that *Daye* is "arguably more lenient"); *Diamond v. Wyrick,* 757 F.2d 192, 193 (8th Cir.1985) (per curiam) (applying the *Daye* standard without citing *Daye* ); *Nelson v. Solem,* 714 F.2d 57 (8th Cir. 1983) (assumed without deciding that *Daye* is consistent with *Thomas* ). This conflict in the

---

**1443**

the State's second full paragraph under the heading "ARGUMENT" begins: "It is well-established that an important purpose of the constitutionally protected right of cross-examination is to provide litigants with a meaningful opportunity to challenge the veracity of testimony through the process of impeachment." Respondent's Brief at 7 (quoting *State v. Johnson*, 700 S.W.2d 815, 817 (Mo.1985) (en banc)). The *Johnson* case turned on the "pivotal question" of whether the trial court's limitation on the defendant's cross-examination of a prosecution witness "amounted to a violation of defendant's right of confrontation under the Sixth Amendment." 700 S.W.2d at 817.

The next two cases which the State cited to the state court were *State v. Russell*, 625 S.W.2d 138 (Mo.1981) (en banc) and *State v. Gilmore*, 681 S.W.2d 934 (Mo. 1984) (en banc), both of which involved sixth amendment issues. In *Russell* the court explicitly referred to the sixth amendment rights of confrontation and cross-examination. 625 S.W.2d at 140–41. The *Gilmore* court cited *Russell* for the proposition that "cross-examination is a fundamental component of confrontation," indisputably a clear reference to the sixth amendment. 681 S.W.2d at 940. Although the trial court, the state court of appeals and the state supreme court chose not to address the constitutional aspects of petitioner Wealot's claims, it cannot be doubted that those constitutional issues were more than fairly presented to the state courts both by petitioner and by the State.[9]

### III.

The sixth amendment protects an accused's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court stated, "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right is included in the right of an accused in a criminal case to confront the witnesses against him." *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068–69, 13 L.Ed.2d 923 (1965). That fundamental right is made obligatory upon the states by the fourteenth amendment. *Id.* at 406, 13 L.Ed. at 928.

Of course, the sixth amendment is not a blanket prohibition against limiting cross-examination of prosecution witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). "[T]rial judges retain wide latitude ... to impose reasonable limits on such cross-examination [i.e., cross-examination focusing on bias] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* However, the Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Thus, when a trial court prohibits *all* inquiry into a witness' possible bias, the court has violated the defendant's right to cross-examine adverse witnesses. *Van Arsdall*, 475 U.S. at 679, 89 L.Ed.2d at 683.

In *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam), a sexual assault case, the Supreme

---

case law leaves open to dispute the current precedential value of *Daye* in the Eighth Circuit.

**9.** Even were the Court to hold that petitioner's claims were not fairly presented to the state courts and procedurally barred in state court, that would not necessarily mean that the claims are beyond federal habeas corpus review. When a petitioner has procedurally defaulted on his constitutional claims in state court, federal review of those claims is nevertheless available if the petitioner can demonstrate sufficient "cause" for the default and actual "prejudice" resulting from the alleged constitutional viola-

tion. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Moreover, the "cause and prejudice" analysis may be disregarded altogether "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986). Although it is unnecessary for the Court to determine whether this case is one of those "extraordinary cases," it definitely is not just another among the myriad of meritless § 2254 motions.

Court considered whether the trial court's limitation on cross-examination of the complaining witness with respect to her cohabitation with a third party violated the accused's sixth amendment right of confrontation. The accused's theory at trial was that he and the complaining witness "engaged in consensual acts and that [the woman]—out of ,fear of jeopardizing her relationship with [the third party]—lied when she told [the third party] she had been raped, and has continued to lie since." *Id.* 488 U.S. at ——, 109 S.Ct. at 483, 102 L.Ed.2d at 520. In view of the accused's theory and that the proposed cross-examination was intended to expose the complaining witness' motive for lying about the rape, the Court concluded that the trial court had violated the accused's constitutional right to cross-examine prosecution witnesses. *Id.* 488 U.S. at ——, 109 S.Ct. at 483–84, 102 L.Ed.2d at 520–21.

■ The similarity between the present case and *Olden* is striking. It cannot seriously be questioned that the petitioner's right to cross-examine Sandra and Larry Morris was violated. The petitioner intended to show that Ms. Morris had a strong motive for concocting the rape story—she feared the retribution of her jealous and abusive boyfriend, Larry Morris. The proposed cross-examination of Sandra and Larry Morris would not have been harassing, prejudicial, confusing or repetitive. The only possible resulting prejudice would have been prejudice against Larry Morris, not Sandra Morris. Indeed, the testimony may have only engendered greater sympathy for Ms. Morris. Nevertheless, the state courts' conclusion that these matters were collateral is clearly wrong since motive is not a collateral issue. When the trial court so limited the petitioner's cross-examination, it violated his constitutional right to cross-examine prosecution witnesses.

### IV.

■ Not all trial errors of a constitutional magnitude require the vacation of a conviction. Indeed, on direct review of sixth amendment confrontation claims, the Supreme Court has held that constitutional error is not reversible error when it is "harmless." *Van Arsdall*, 475 U.S. at 684, 89 L.Ed.2d at 686. Error is harmless only if it is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). As one writer has noted, "[t]his harmless error doctrine has been applied both on direct review and in collateral proceedings." L. Yackle, *Postconviction Remedies*, § 94, at 365 (1981). *See Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (applying harmless error standard in habeas case). Whether a constitutional error is harmless depends on several factors:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 89 L.Ed.2d at 686–87.[10]

---

10. The Fourth Circuit, however, has held that "a strict harmless error analysis" is not appropriate for review of petitions for writs of habeas corpus. *Fulton v. Warden, Maryland Penitentiary*, 744 F.2d 1026, 1032 (4th Cir.1984), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985). *Accord Morris v. State of Maryland*, 715 F.2d 106 (4th Cir.1983). Instead, the Fourth Circuit has further ratcheted the standard so that a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Fulton*, 744 F.2d at 1032 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)). Sig-

nificantly, both *Fulton* and *Morris* were fourteenth amendment challenges to jury instructions, not relying upon other constitutionally protected rights. Whether the Fourth Circuit meant to substitute the harmless-error standard in all habeas petitions is unclear. To do so, however, would be to depart from Supreme Court precedent applying the harmless-error standard to habeas petitions alleging constitutional errors other than the denial of due process. If the *Morris–Fulton* standard applies only to due process claims, then it is clearly an appropriate substitution for the harmless-error standard. In effect, it merges the questions of

In the present case, the State argues that "petitioner must demonstrate that there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Response at 4. In support of that proposition, the State cites *Hamilton v. Nix,* 809 F.2d 463, 470 (8th Cir.) (en banc), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987) and *Crespo v. Armontrout,* 818 F.2d 684, 687 (8th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490 (1987). Neither case supports the State's contention. In *Hamilton,* the court stated that "a federal court's review of alleged due process violations stemming from a state court conviction is narrow. The petitioner must show that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" 809 F.2d at 470 (quoting *Moore v. Wyrick,* 760 F.2d 884, 886 (8th Cir.1985)). In *Crespo,* the court was "determining whether the prosecutor's question [at trial] was so egregious that it fatally infected the entire trial, rendering it fundamentally unfair and denying Crespo due process." 818 F.2d at 687. Both *Hamilton* and *Crespo* were due process cases. Indeed, the *Hamilton* and *Crespo* standards are tests for determining whether a denial of due process occurred. The State has failed to offer any reasons justifying a departure in this case from the usual harmless error analysis.[11] The state has not undertaken to demonstrate that the error in petitioner's trial was harmless, and like the Court in *Olden,* this Court finds it "impossible to conclude 'beyond a reasonable doubt' that the restriction on petitioner's right to confrontation was harmless." 488 U.S. at ——, 109 S.Ct. at 484, 102 L.Ed.2d at 521.

■ Here, as in *Olden,* the complaining witness' testimony was "central, indeed crucial, to the prosecution's case," and "the

State's case against petitioner was far from overwhelming." *Id.* 488 U.S. at ——, 109 S.Ct. at 484, 102 L.Ed.2d at 521. Although the State contends that it's case against the petitioner was overwhelming, the fact is that the overwhelming aspect of this case is the dearth of evidence against petitioner. The only evidence that Sandra Morris had sexual intercourse with *anyone* is her own testimony. The only evidence that the intercourse occurred without her consent is her own testimony. The only evidence that links petitioner to this alleged rape is Sandra Morris' testimony. As discussed above, the only physical evidence of criminal activity—the slashed window screen and broken window—is thoroughly consistent with petitioner's theory that Sandra Morris broke out of the apartment and then broke back into the apartment. Consideration of the *Van Arsdall* factors leads this Court to conclude that the sixth amendment violation in the petitioner's trial was far from harmless.

Accordingly, it is hereby ORDERED that the petition for the writ of habeas corpus is GRANTED and that petitioner's conviction is VACATED and SET ASIDE. It is FURTHER ORDERED that respondent release petitioner from custody unless petitioner is retried within 120 days from the date of this Order or, if an appeal is taken from this Order, within 120 days of the date this Order becomes final.

IT IS SO ORDERED.

---

whether there was a denial of due process and, if so, whether the error is reversible.

11. *See Blackwell v. Brewer,* 562 F.2d 596 (8th Cir.1977) (applying harmless error analysis to sixth amendment confrontation claim in habeas case). At any rate, the standard of review ap-

plied in this case would not change the result. Even under the fourteenth amendment standard, the sixth amendment violation in this case was "so egregious that it fatally infected the proceedings and rendered [the] entire trial fundamentally unfair." *Hamilton,* 809 F.2d at 470.