Frank WEALOT, Appellee,

v.

Bill ARMONTROUT, Appellant.

No. 90–1640.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1990.

Decided Nov. 8, 1991.

William L. Webster and Stephen D. Hawke, Jefferson City, Mo., on brief, for appellant.

David B. Young, Kansas City, Mo., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

McMILLIAN, Circuit Judge.

The state of Missouri appeals from a final order entered in the District Court[1] for the Western District of Missouri granting the petition for habeas relief filed by

---

* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

Frank Wealot. *Wealot v. Armontrout,* 740 F.Supp. 1436 (W.D.Mo.1990). For reversal, the state argues the district court erred in holding the limitation of cross-examination of the complaining witness and her husband violated Wealot's sixth amendment right of confrontation and that this violation was not harmless error. For the reasons discussed below, we affirm the order of the district court.

BACKGROUND FACTS

The following statement of facts is taken in large part from the memorandum opinion of the district court. In 1986 Wealot was charged with forcible rape in violation of Mo.Rev.Stat. § 566.030 (1986) and with being a persistent offender. The complaining witness, Sandra Morris, testified that she was raped at knife-point by a male intruder who had broken into her apartment during the early morning hours of May 31, 1986. Her husband, Larry Morris, had left for work about 12:30 a.m. Sandra Morris testified that she was awakened in her bedroom by a man shaking her, telling her to get out of bed. She testified that the man demanded money several times, unsuccessfully attempted to force her to perform a sexual act, forced her and her son into the living room, ordered her to remove her clothing, and then raped her. She testified that he then ordered her to go back into the bedroom and told her not to come out. She telephoned the police from the bedroom.

The police arrived but could not enter the apartment because Larry Morris had locked the apartment doors before leaving for work. Sandra Morris noticed that the screen of the large kitchen window had been slashed or cut and the edges of the screen curled outward as if someone had exited through the window. A small window in the kitchen door had been broken and pieces of glass were on the kitchen floor, indicating that the window had been broken from the outside.

Sandra Morris testified that her assailant talked to her "off and on" during the attack and that she was able to identify him as Wealot because she recognized his voice. She had never spoken with Wealot but had overheard him speaking to her husband or others. She also testified that her assailant wore blue jeans, slippers, and no shirt and had a stocking pulled over his head. Her identification testimony was critical to the state's case because there was no physical evidence linking Wealot with Sandra Morris or the apartment. There was no physical or medical evidence of sexual intercourse, even though Sandra Morris had been examined at a hospital soon afterward. The testimony of the other state witnesses was corroborative; only Sandra Morris directly implicated Wealot.

The theories of defense were alibi and fabrication. Defense counsel argued that Sandra Morris had a strong motive for giving false testimony against Wealot. Defense counsel sought to cross-examine both Sandra Morris and Larry Morris about whether Larry Morris regularly locked Sandra Morris in the apartment and whether Larry Morris was jealous and abusive. The theory of the defense was that Sandra Morris slashed the window screen to "escape" from the apartment and broke the window in the kitchen door to get back inside and that she fabricated the rape and only identified Wealot as the assailant in order to placate Larry Morris and to deflect his suspicions from others. However, the state trial court refused to permit cross-examination of either Sandra Morris or Larry Morris on these points. Defense counsel also exposed significant inconsistencies in Sandra Morris's testimony. For example, she did not identify Wealot as the assailant when she first spoke to the police. She described the assailant as 5'10" tall (Wealot is 5'5" tall). She did not mention that the assailant had been wearing slippers until after she had seen Wealot wearing slippers later that day. Nor did she describe Wealot's high pitched voice or tattoos to the police.

The jury found Wealot guilty. The state trial court sentenced him to thirty years imprisonment. His conviction was affirmed on direct appeal. *State v. Wealot,* 745 S.W.2d 690 (Mo.Ct.App.1987) (per curiam) (order). On March 15, 1988, his motion for an application for transfer to the

state supreme court was denied. Wealot did not file a motion for post-conviction relief.

## DISTRICT COURT DECISION

In 1988 Wealot filed a petition for a writ of habeas corpus in federal district court, claiming that the limitation of cross-examination of Sandra Morris and Larry Morris violated his right to confront the witnesses against him in violation of the sixth and fourteenth amendments. The district court found that Wealot had exhausted his available state remedies, 740 F.Supp. at 1441, and had fairly presented his confrontation claims to the state courts and thus had preserved them for federal habeas review. *Id.* at 1441–43. On the merits, the district court held that the limitation of cross-examination of Sandra Morris and Larry Morris for bias and motive to fabricate violated Wealot's constitutional right to cross-examine prosecution witnesses. *Id.* at 1444. The district court found that such cross-examination would not have been harassing, prejudicial, confusing, or repetitive and would not have involved collateral issues because bias or motive is not a collateral issue. *Id.* The district court concluded that the confrontation violation was not harmless because the credibility of the complaining witness was crucial to the state's case and the state's case against Wealot was far from overwhelming. *Id.* at 1445. The district court granted the habeas petition, vacated and set aside the conviction, and ordered Wealot released from custody unless the state retried him within 120 days. This appeal followed.

## WAIVER

■ The state first argues the district court erred in considering the confrontation claim on the merits. In its main brief on appeal the state argues habeas review of the confrontation claim is barred by procedural default because defense counsel failed to make a complete offer of proof at trial. In its reply brief, however, the state denies any claim of procedural default on this ground. Given this disclaimer of procedural default, we proceed to consideration of the merits. We further note that, because the state did not raise in district court the claim that defense counsel had waived the confrontation clause claim by failing to make a complete offer of proof at trial, the state failed to preserve this issue for appellate review.

## LIMITATION OF CROSS-EXAMINATION

■ The state argues the district court erred in holding that the limitation of cross-examination of Sandra Morris and Larry Morris for bias and motive to fabricate violated Wealot's confrontation right. The state argues the nature of the couple's domestic relationship and whether or not Larry Morris regularly locked Sandra Morris inside the apartment were collateral matters and that cross-examination on these matters would have been harassing to the witnesses and confusing to the jury. The state also argues that this is not a case in which there was no cross-examination of prosecution witnesses and that the jury had sufficient information to assess their credibility. The state argues defense counsel was permitted to cross-examine Sandra Morris about whether she was afraid of her husband and her concern about her husband's suspicions and to cross-examine Larry Morris about whether he had locked the apartment and, if so, why he had done so. We disagree.

The confrontation clause of the sixth amendment protects the right of criminal defendants "to be confronted with the witnesses against [them]." U.S. Const., amend. VI. " 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), *citing* 5 J. Wigmore, Evidence § 1395, at 123 (3d ed. 1940) (emphasis in original). The Supreme Court has recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska,* 415 U.S. at 316–17, 94 S.Ct. at 1110 (citation omitted). In *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986), *citing*

*Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111, the Supreme Court held that "a criminal defendant states a violation of the Confrontation Clause by showing that he [or she] was prohibited from engaging in cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' "

It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435.

■ We agree with the district court that the limitation of cross-examination violated Wealot's constitutionally protected right of confrontation. A reasonable jury might have received a significantly different impression of the credibility of Sandra Morris, as well as that of Larry Morris, had defense counsel been permitted to show Sandra Morris had a strong motive for falsely accusing Wealot. Defense counsel intended to show that Larry Morris was a jealous and abusive man who regularly locked his wife inside their apartment and that Sandra Morris was afraid of her husband and had "escaped" from their locked apartment several times in the past. Potential bias is not a collateral issue. *See Olden v. Kentucky,* 488 U.S. 227, 231–32, 109 S.Ct. 480, 482–83, 102 L.Ed.2d 513 (1988) (per curiam) (limitation of cross-examination of complaining witness about her cohabitation with a third party violated right of confrontation; possible motive for lying was fear of jeopardizing relationship); *Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110 (bias is "always relevant as discred-iting the witness and affecting the weight of his [or her] testimony"). Contrary to the state's arguments, the proposed line of cross-examination would not have required an in-depth exploration of the couple's 10–year relationship and would not have been harassing, prejudicial, confusing, or repetitive.

HARMLESS ERROR

■ The state next argues the district court erred in applying a harmless error analysis and instead should have considered whether there was a reasonable probability that, but for the confrontation violation, the outcome of the trial would have been different. A similar argument was rejected by the Supreme Court in *Delaware v. Van Arsdall.* In that case the state argued that a defendant should have to show "outcome determinative" prejudice in order to state a violation of the Confrontation Clause. The Court acknowledged that "[w]hile some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, the focus of the Confrontation Clause is on individual witnesses." 475 U.S. at 680, 106 S.Ct. at 1435 (citation omitted). For this reason, the Court held that "the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial," *id.,* and applied harmless error analysis. *Id.* at 684, 106 S.Ct. at 1438; *cf. United States v. Barnes,* 798 F.2d 283, 290 (8th Cir.1986) (direct appeal; denial of right of cross-examination held not harmless error); *Blackwell v. Brewer,* 562 F.2d 596, 600 (8th Cir.1977) (collateral review; defendant's exclusion from courtroom proceedings held not harmless error).

The state argues that, even under the harmless error rule, the confrontation violation was harmless because there was substantial evidence of guilt, alibi defense witnesses were not credible, and defense counsel in fact argued to the jury during closing arguments that Sandra Morris had a motive to falsely accuse Wealot. We disagree.

The factors to be considered in determining whether a confrontation violation is harmless include

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. We agree with the district court that it is impossible in the present case to conclude beyond a reasonable doubt that the limitation on cross-examination was harmless. In this prosecution for rape, the testimony of Sandra Morris as the complaining witness was " 'central, indeed crucial, to the prosecution's case,' and, 'the State's case against [Wealot] was far from overwhelming.' " *Wealot v. Armontrout*, 740 F.Supp. at 1445, *citing Olden v. Kentucky*, 488 U.S. at 233, 109 S.Ct. at 484. The cross-examination permitted did not allow defense counsel to inquire into the potential bias of the complaining witness or to demonstrate the falsity of her testimony. There was no physical or medical evidence corroborating sexual intercourse, and, as noted by the district court, "the only physical evidence of criminal activity—the slashed window screen and broken window—is thoroughly consistent with [the defense] theory that Sandra Morris broke out of the apartment and then broke back into the apartment." *Wealot v. Armontrout*, 740 F.Supp. at 1445.

In sum, we hold the limitation of cross-examination violated Wealot's constitutionally protected right of cross-examination and that this error was not harmless. Accordingly, the order of the district court granting habeas relief is affirmed.[2]

---

**2.** In light of our decision to affirm the order of the district court, we deny as moot Wealot's

motion to reconsider the order granting the state's motion to expand the record on appeal.