**STATE of Missouri, Respondent,**

v.

**Gordon GOLDSBY, Appellant.**

**Gordon GOLDSBY, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 59134, 61546.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 22, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 21, 1993.

Application to Transfer Denied
Feb. 23, 1993.

Robert Randall Turley, Jefferson City, Raymond Legg, William J. Swift, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Gordon Goldsby, appellant, appeals his jury convictions in the Circuit Court of St. Louis County for kidnapping, § 559.240 RSMo.1969; rape, § 559.260 RSMo.1969; and assault with intent to do great bodily harm with malice, § 559.180 RSMo.1969, for which he was sentenced to consecutive terms of ten years, life, and twenty-five years respectively. Appellant also appeals the denial of his post-conviction relief (Rule 29.15) motion.

On appeal, appellant claims the trial court erred in (1) failing to require the state to explain its peremptory jury strikes exercised against four of five eligible black venirepersons; and (2) submitting MAI–CR3d 302.04, defining reasonable doubt. He also claims the motion court erred in denying, without an evidentiary hearing, his Rule 29.15 motion based on ineffective assistance of counsel. We affirm.

Appellant does not contest the sufficiency of the evidence so we briefly review the evidence in a light most favorable to the verdicts. On March 17, 1972, at approximately one p.m., appellant abducted victim at knife point from the parking lot of a shopping mall near Kansas City where she worked. Appellant drove victim's car east on Interstate 70, and approximately four hours later, reached the St. Louis area during rush hour traffic. Appellant exited the highway and proceeded to drive around St. Louis County, apparently looking for an acquaintance who owed him money.

At some point, appellant pulled onto a side road which led to a chained off field. He drove around the barricade onto the field. There he allowed victim to relieve herself, and when she returned to the car, he raped and assaulted her. The car became stuck in the field. As appellant tried to move the car, victim noticed military discharge papers with appellant's name on them in his coat pocket. About this time, another car arrived, and two young men, Steve Hageman and Mark Terrill, asked appellant if they could be of assistance. As they spoke with appellant, victim tried to exit the car screaming for help. Appellant then made an attempt to get in Mark Terrill's car which had been left running with the door open. Terrill closed the door of his car in time to prevent appellant from entering, then appellant and Terrill engaged in a scuffle outside Terrill's car. Terrill knocked appellant in a nearby ditch, and when appellant got up and headed back towards victim's car, Terrill got a pellet pistol from under his car seat, and told appellant to freeze and spread-eagle on the hood of victim's car. Hageman helped victim into Terrill's car and they left appellant and drove to the City of Manchester police

station. Appellant was subsequently arrested, arraigned, and released on bond but failed to appear for trial. He spent some time in Malaysia and was arrested reentering the United States at an airport in Seattle in January of 1990. Victim, Hageman and Terrill all identified appellant from photo lineups soon after the incident, and later at trial.

We first address appellant's direct appeal claims. In his first point, appellant, who is white, claims the trial court erred in failing to require the state to explain its peremptory strikes of four of the five eligible black venirepersons. He claims that a prima facie case of racially motivated strikes was demonstrated by the disproportionate number of challenges exercised against black venirepersons and the fact that black venirepersons who had not spoken during voir dire were stricken. Appellant claims the failure to require explanations precluded appellant from establishing that the strikes were racially motivated in violation of his right to due process and the venirepersons' rights to equal protection. Alternatively, appellant claims the trial court erred in failing to require the prosecutor to explain the strikes in compliance with *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), which requires that the prosecutor's explanations be considered in determining whether a prima facie case of racially motivated strikes had been established.

The record reveals that after the state and defense counsel had made their strikes, the venirepersons selected for the jury were seated in the jury box. The trial court then excused those venirepersons who were not selected to serve on the jury. After the unselected venirepersons had been discharged, defense counsel indicated to the court that he wished to make a record regarding the state's peremptory strikes. The court suggested, and the prosecutor agreed, that the jury be sworn and dismissed for lunch, and then defense counsel could make a record as if the jury had not yet been sworn. The court then *had* the jury sworn, read them the preliminary instructions, and dismissed them for lunch. Defense counsel then formally made objection to the state's use of its peremptory jury strikes based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claiming the prosecutor had impermissibly discriminated against black members of the venire by excluding them from service on the petit jury. The prosecutor responded by stating that one black person was seated on the jury so there was no systematic exclusion of black venirepersons, and also that *Batson* did not apply in this particular case. The prosecutor did not make any further record on appellant's *Batson* claim. Appellant's objection was overruled by the trial court.

Although there is no racial identity between appellant and the excluded venirepersons, an inquiry as to the challenged peremptory strikes of black venirepersons is now required. *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers* the United States Supreme Court recognized that *Batson* challenges were meant to protect not only the equal protection rights of the defendant, but also the equal protection rights of excluded venirepersons. To facilitate the vindication of the excluded venirepersons' rights, the Supreme Court held that a criminal defendant has standing to assert the equal protection rights of venirepersons excluded for racial reasons from their jury. *State v. Parker*, 836 S.W.2d 930, 933–34[1, 2] (Mo. banc 1992). (Citations omitted.)

"While *Batson* recognized the right of criminal defendants to challenge racially motivated strikes by the prosecutor, the Court explicitly predicated the right upon the defendant's timely objection. Subsequent to *Batson*, 'both the federal and state courts have consistently held that the failure to make a timely objection effectively waives any arguments based on improprieties in jury selection which the defendant might urge pursuant to *Batson*'." *Id.*, at 935[9]. (Citations omitted.)

Appellant acknowledges that any objection based on *Batson* should be made before the eligible venirepersons are discharged and the jury sworn. He claims, however, that the state cannot be heard to

argue the untimeliness of his objection on appeal because the prosecutor agreed that the objection would be deemed as having been made before the petit jury panel was sworn, and did not object in the trial court to the untimeliness of appellant's *Batson* challenge.

The state argues that since appellant's *Batson* objection was not made until after the unselected remaining members of the venire were discharged, his objection was untimely and therefore not preserved for appellate review. The state also asserts that the prosecutor's agreement to deem the *Batson* record as having been made before the jury was sworn is of no moment since at that point appellant's *Batson* claim had already been waived. The state's brief does not address the effect of its failure to object in the trial court to the untimeliness of appellant's *Batson* objection on its right to argue the point on appeal.

■ A thoroughly considered discussion of the timeliness of *Batson* challenges is set out in *State v. Parker*, 836 S.W.2d at 930. In *Parker*, our Supreme Court found that a *Batson* challenge raised before the unselected members of the venire are excused and the jury sworn is timely. *Id.*, at 935[10]. The Court reasoned that requiring defendants to make *Batson* challenges prior to the venire's dismissal allows the trial court to determine whether a constitutional violation has occurred while there remains time to correct the error by disallowing the offending strike, and also maximizes judicial time and resources because there is no need to quash the jury and call a new venire. *Id.*, at 936[10]. "In sum, this Court agrees that '[i]t is the release of the unselected members of the venire and the problems and difficulties created thereby which truly govern the timeliness of a *Batson* motion.'" *Id.*, at 937[10] (quoting *McGruder v. State*, 560 So.2d 1137, 1143 (Ala.Cr.App.1989)).

■ Since appellant does not argue that his objection in the trial court was timely, the question becomes whether appellant's claim should be considered on appeal because of (1) the prosecutor's agreement that the *Batson* record, although made af-

ter the jury was sworn, would be deemed as having been made before the jury was sworn; or (2) the prosecution's failure to object in the trial court to the timeliness of appellant's objection.

We agree with the state that the agreement to deem appellant's objection as having been made before the jury was sworn is irrelevant as to whether the objection was timely. Even if the objection was made at the time to which the parties stipulated, it would still be untimely under *Parker* as well as under the law as it existed on the date of trial. *See, State v. Smith*, 791 S.W.2d 744, 747–48[4] (Mo.App.1990).

Appellant's argument that the state has waived its timeliness objection by failing to present it to the trial court is based on the rationale that the principle of waiver applies to the state as well as to a defendant. Although in principle we may agree, appellant has not directed us to, nor has our research uncovered, any Missouri cases on point. In support of his position, appellant cites to *People v. Henderson*, 142 Ill.2d 258, 154 Ill.Dec. 785, 797–98, 568 N.E.2d 1234, 1246–47 (1990), cert. denied, *sub nom. Henderson v. Illinois*, —— U.S. ——, 112 S.Ct. 233, 116 L.Ed.2d 189 (1991). In that case, the Court ruled that Henderson had waived his *Batson* claim by voicing his objection and moving for a mistrial in an untimely manner. *Id.*, 154 Ill.Dec. at 797, 568 N.E.2d at 1246[8, 9]. The Court considered Henderson's claim nonetheless holding that the state, for its part, had waived its right to raise defendant's waiver when the prosecution neglected to argue the untimeliness of defendant's motion at the time the motion was made, and instead attacked the motion's merits. *Id.*, 154 Ill.Dec. at 797–98, 568 N.E.2d at 1246–47[8, 9].

We are of the view, however, that even though the prosecution failed to raise the timeliness of appellant's objection in the trial court, appellant's objection was no less untimely. It is appellant who asserts the point of error on appeal, and it is appellant's obligation in the trial court to preserve that point for review. The preservation of trial court error in the denial of a *Batson* motion for appellate review re-

quires that the objection be timely, and we are unwilling to hold, as appellant requests, that an untimely *Batson* claim may be pursued on appeal because the prosecution failed to object to the *Batson* claim on timeliness grounds.

Further, appellant cites to *Wealot v. Armontrout*, 948 F.2d 497, 499 (8th Cir. 1991), where the state, appealing from a district court ruling granting petitioner habeas relief, argued that habeas review of petitioner's confrontation of witnesses claim was barred by procedural default because defense counsel failed to make a complete offer of proof at trial. The court held that "because the state did not raise in district court the claim that defense counsel had waived the confrontation clause claim by failing to make a complete offer of proof at trial, the state failed to preserve this issue for appellate review." *Id.*, at 499[1]. We find *Wealot* distinguishable from the present case because it was the state in *Wealot*, not the petitioner, appealing an alleged error on the part of the district court. This is consistent with the proposition that it is the obligation of the party making the claim of error on appeal to properly preserve that claim with a timely motion or objection in the trial court. Thus, we hold that appellant's claim of error based on the trial court's denial of his *Batson* motion was not preserved.

■ Appellant's second point on direct appeal is that the trial court erred in submitting MAI–CR3d 302.04, defining reasonable doubt, as the language of this instruction suggests a higher degree of doubt than is constitutionally required for acquittal, in violation of appellant's right to due process. Appellant relies on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), claiming the "firmly convinced" language of MAI–CR3d 302.04 does not satisfy due process for the same reason the *Cage* instruction equating reasonable doubt with "grave uncertainty" and "actual substantial doubt" did not satisfy due process.

Our Supreme Court has held that the term "firmly convinced" is "intended to assist lay jurors in their understanding of the legal phrase 'beyond a reasonable doubt' [and that] 'firmly convinced' is essentially synonymous with 'beyond a reasonable doubt'." *State v. Antwine*, 743 S.W.2d at 62–63[12]. Appellant acknowledges *State v. Griffin*, 818 S.W.2d 278, 282[7] (Mo. banc 1991), reaffirming the *Antwine* holding, but presents his claim in the event some court in the future concludes the reasonable doubt definition is constitutionally deficient and because there is authority that suggests *Griffin* is wrongly decided. We, however, follow the law as espoused by our Supreme Court in *Griffin*. The trial court did not err in submitting the instruction. Point denied.

As to his 29.15 motion, appellant asserts that the motion court clearly erred in denying his claim that he was denied his right to effective assistance of counsel because his trial attorney did not properly object to the prosecutor's cross-examination of appellant regarding appellant's Malaysian conviction for drug trafficking, and this failure to properly object resulted in prejudice to appellant because the jury heard the state's inquiries regarding the Malaysian convictions allegedly involving substantial quantities of heroin and marijuana. Appellant also claims prejudice because trial counsel did not preserve this objection for appellate review by including it in the motion for new trial.

■ Review of the denial of appellant's Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Taylor v. State*, 782 S.W.2d 741, 743 (Mo.App.1989). The motion court's findings and conclusions will be deemed clearly erroneous only if, after a review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Id.*

■ To prevail on an ineffective assistance of counsel claim, appellant must show that his counsel's representation fell below an objective standard of reasonableness and that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, appellant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

█ The record reveals that trial counsel made a motion in limine, based on irrelevance and prejudicial effect outweighing probative value, to prevent the prosecutor from inquiring into appellant's Malaysian conviction. Trial counsel renewed this objection, and was granted a continuing objection to this evidence, during appellant's testimony in the trial. These objections were overruled. The motion for new trial, however, does not contain an allegation of error based on the trial court's permitting the inquiry as to appellant's Malaysian conviction. Appellant asserts that a reasonably competent trial counsel would have objected on the grounds that the Malaysian justice system is so foreign to ours that a Malaysian conviction should be inadmissible for any purpose, and would have preserved this objection by including it in the motion for new trial.

To support his claim that the Malaysian judicial and legal system are so foreign to our systems that evidence of such a conviction was not admissible for any purpose, appellant alleged in his Rule 29.15 motion that he was sentenced in Malaysia to life imprisonment and "six strokes of the cane", and that the interrogation in Malaysia was done under conditions which would not be acceptable under the United States and Missouri constitutions. There were no other allegations of fact regarding any deficiencies in the Malaysian justice system in general, nor as regards appellant's particular conviction. The motion court concluded that the use of the Malaysian conviction for impeachment purposes was proper and appellant's attorney was not ineffective for failing to preserve the point for appeal.

█ Section 491.050 RSMo. (1986) and § 546.260 RSMo. (1986) provide that any person convicted of a crime is a competent witness, including the defendant, but any prior criminal convictions may be proved to affect his credibility. These statutes have been interpreted as conferring an absolute right to show prior convictions and the nature thereof for the purpose of impeachment. *State v. Giffin*, 640 S.W.2d 128, 132[16] (Mo.1982). Thus appellant, having testified on his own behalf, was a witness subject to impeachment the same as any other witness.

In 36 POF2d 758 it is stated:

A conviction in a foreign country is admissible in most jurisdictions unless the trial proceeding giving rise to the conviction lacked basic due process protections as to render it grossly unfair. A foreign felony conviction may not be deemed inadmissible for impeachment purposes if the foreign legal system merely lacked certain procedural safeguards enjoyed in this country, such as the right to trial by jury, but the proceeding as a whole was not unfair. As long as the foreign jurisdiction accords the minimum of due process to an accused and has followed its own procedures during the criminal trial, the foreign felony conviction can be used for impeachment purposes.

Here, appellant included in his 29.15 motion only conclusory allegations regarding the constitutionally defective nature of the Malaysian justice system. Aside from the conclusory allegation that the interrogation in Malaysia was conducted under conditions which would not be acceptable under the United States and Missouri constitutions, appellant's motion is completely lacking in factual allegations as to how the Malaysian proceedings did not comport with minimum standards of due process or any other constitutional guarantee. While appellant substantially enhances his claims about the Malaysian justice system in his appellate brief, a point on appeal can be considered only to the extent that it was raised before the motion court. *State v. Norris*, 813 S.W.2d 379, 382 (Mo.App.1991). Based on the allegations contained in appellant's motion, we cannot say the conclusions of the motion court are clearly erroneous.

Furthermore, since the evidence connecting appellant to the crime was very strong, we doubt seriously that the result in the

trial would have been different had the impeachment of appellant regarding other crimes been omitted. Point denied.

Judgment of the trial court and the motion court affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.