## Harold William WOOD *v.* STATE of Arkansas

CR 83-35                                    657 S.W.2d 528

### Supreme Court of Arkansas
### Opinion delivered September 19, 1983
[Rehearing denied October 17, 1983.]

*Terry M. Poynter* of *Poynter, Huckaba & Gearhart, P.A.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. On November 6, 1981, the appellant, Harold William Wood, shot and killed his son-in-law, Ricky Winnett, age eighteen. Charged with first-degree murder, Wood was found guilty and sentenced to life imprisonment. No reversible error is shown in his eleven arguments for reversal.

Terry Wood Winnett, Wood's seventeen-year-old daughter, testified that she had lived with her father all her life and had had sexual relations with him once or twice a week from the time she was ten years old until a week before Ricky's death. After she married Ricky in May, 1981, the couple spent only two nights together, in Wood's home, before Ricky entered the army and left. During his absence Wood, as Terry's next friend, filed a suit against Ricky for divorce. Ricky returned on November 3. He and Terry went back together again and instructed Terry's lawyer to dismiss the divorce case. Wood apparently was angered by the reconciliation, stated to a cousin on November 4 that he was going to kill "the little bastard," and bought a pistol on the morning of November 6. That night, as Wood, Ricky and Terry were standing together at a snack bar in Gassville, Wood shot and killed Ricky with virtually no provocation, firing four times.

With the proof of the killing being uncontradicted, Wood's defense was that of mental disease or defect. The proof showed that he suffers from epilepsy, that he sustained

at least some brain damage in an accident when he was eighteen, and that while he was in jail awaiting trial he lowered his head and ran into a wall, breaking his neck. The testimony about Wood's mental state is in such conflict, however, that there is and could be no contention that the verdict is not supported by sufficient evidence.

The plea of insanity gives rise to three arguments that we may consider together. We cannot sustain the contention that the trial court should have granted either a change of venue or a continuance because 45 days before the trial John Hinckley, Jr., had been acquitted, by reason of insanity, of charges arising from the shooting of President Reagan and others. Inasmuch as the reaction to the Hinckley verdict was widespread, the trial judge did not abuse his discretion in holding that a transfer of the case to another county was not warranted, despite two editorials in a Baxter county newspaper. A case relied upon by the appellant, *Whitehead* v. *State*, 121 Ark. 390, 181 S.W. 154 (1915), has not been the law since the circuit judge's authority over changes of venue was broadened in 1936. *Robertson* v. *State*, 212 Ark. 301, 206 S.W.2d 748 (1948). Continuances being within the trial judge's broad discretion, we find no error in his conclusion that a postponement to some unspecified date in the future was not needed. *See Edgemon* v. *State*, 275 Ark. 313, 630 S.W.2d 26 (1982); *Davis* v. *State*, 251 Ark. 771, 475 S.W.2d 155 (1972).

Defense counsel was denied permission to question each juror on voir dire about his or her reaction to the Hinckley verdict. The trial judge held that such questioning would unduly prolong the selection process, raise collateral issues, create problems in explaining the distinction between the law governing the Hinckley case and the Arkansas law, and in fact prove to be unnecessary because any bias on the part of the jurors would be revealed during permissible questioning. The court's handling of the situation was right. Throughout the voir dire defense counsel were allowed to display and discuss with the jurors a poster containing a reprint of AMCI 4009, stating the Arkansas law on the subject. Counsel were also permitted to call the jurors' attention to the public criticism of the insanity

defense "in recent weeks" and to inquire about their attitude toward that defense. As the trial judge had foreseen, some of the veniremen did mention the Hinckley case, and three jurors were excused for cause because of their reluctance to recognize an insanity defense. Our study of the voir dire proceedings convinces us that the trial court's limitation on counsel's voir dire examination did not prevent Wood from obtaining a fair and impartial jury.

During the selection of the jury the veniremen were questioned in groups of two to four. Without objection the prosecutor explained to several of the groups that the state would be required to prove its case beyond a reasonable doubt, with a presumption of innocence, and that the defense would be required to prove mental disease or defect by a preponderance of the evidence, with a presumption that every person is sane. Defense counsel finally objected, arguing that to permit such statements to continue would amount to the court's commenting on the evidence by telling the jury indirectly that there is a presumption of sanity. This position is untenable. Indeed, if a trial court's rulings upon objections were construed as comments on the evidence, it would not be possible to conduct a trial without going into chambers again and again. Moreover, the objection came too late.

A fourth argument rests upon the trial judge's refusal to excuse for cause two jurors having some prior opinions about the case. The situation is a frequent one, in which a juror wavers back and forth as the questioning continues. We perceive no error. A fifth argument, that a former policeman should have been excused for actual bias despite his positive answers to the contrary, does not merit discussion.

Sixth, it is insisted that Terry's testimony about her seven-year sexual relationship with her father was inadmissible, as being proof of other crimes on the defendant's part. *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). Such proof, however, is permitted to show motive and intent. *Alford*; Unif. R. Evid. 404 (b). Absent Terry's testimony, the jury could have attributed the killing solely to Wood's

mental condition rather than to his strong hostility to his daughter's marriage. The jurors were entitled to consider all relevant facts, a proper cautionary instruction having been given.

In two other arguments it is contended that the defense should have been permitted to prove by a lay witness that in 1975 Wood had shot his dog because he said the dog had lied to him and to prove by a psychologist that one of his patients had engaged in uncontrolled angry conduct of which he later had no memory, the doctor adding that the neck-breaking episode of the defendant was similar. Neither of the particular incidents had any direct relevance or similarity to the case at hand. The trial judge did not exceed the limits of his discretion in considering the probative value of such unrelated incidents to be outweighed by their prejudicial effect upon the jury. Nor did the court err in excluding a one-page report prepared in 1976 by Dr. Gotaas. It was so technical and so indefinite as to be of no value to the jury. Tenth, we have frequently held that the State is not required to supply the defense with funds to employ expert psychiatrists when, as here, no real necessity is shown to exist. We decline to change our rule, as counsel urge us to do.

Finally, it is argued that the accused's privilege against self-incrimination was violated by the trial court's requirement that he disclose the names and addresses of his witnesses. This argument is based on the dissenting opinion in *Williams* v. *Florida,* 399 U.S. 78 (1970), but we agree with the contrary view taken by the majority in that case.

We find no prejudicial error in the points that are argued or in any other ruling brought to our attention. The appellant appears to have received a fair trial, pursuant to law.

Affirmed.