Harold W. WOOD, Appellant,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.

No. 86–1187.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1986.
Decided Jan. 7, 1987.

**458**

Jerry Malone, Little Rock, Ark., for appellant.

Connie Griffin, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Petitioner Harold W. Wood, an Arkansas prisoner serving a life sentence, appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Wood contends that various trial errors deprived him of a fair trial and that consequently he should be granted relief from his first degree murder conviction. We affirm the denial of habeas relief.

### I. FACTS

On November 16, 1981, Wood shot and killed his son-in-law, Ricky Winnett, age eighteen. At trial, Terry Wood Winnett, Wood's seventeen-year-old daughter, testified that she had resided all her life with her father who, she contended, had sexually abused her since she was ten years old.

---

1. The Honorable G. Thomas Eisele, Chief United States District Judge for the Eastern District of Arkansas.

Wood, she claimed, had forced her to have sexual intercourse with him once or twice each week. This sexual abuse, she asserted, continued up until a week before Winnett's death. After she married Winnett in May, 1981, the couple spent only two nights together, in Wood's home, before Winnett entered the army and left the area of Mountain Home, Arkansas.

During Winnett's absence, Wood, as Terry's next friend, filed suit against Winnett for divorce. When Winnett, now an army deserter, returned briefly to Mountain Home on September 17, 1981, Wood pulled a gun on him in Wood's trailer. Winnett returned to Mountain Home permanently on November 3, 1981. After reconciling with Terry, Winnett instructed Terry's lawyer to dismiss the divorce case. Wood, apparently angered by the reconciliation, told a cousin on November 4, 1981 that he intended to kill "the little bastard", and bought a pistol two days later, on the morning of November 6. That night, as Wood, Winnett and Terry were standing together at a drive-in theatre snack bar where Terry worked, Wood shot and killed Winnett without provocation, firing four times.

At trial, Wood did not deny that he shot and killed Winnett. Rather, he asserted that mental illness prevented him from being criminally responsible for the act. Wood unsuccessfully presented this defense before a jury in the Baxter County Circuit Court of Arkansas and was convicted of first degree murder in violation of Ark.Stat.Ann. § 41–1502 (1977). Wood was sentenced to life imprisonment. On direct appeal to the Supreme Court of Arkansas, Wood's conviction was affirmed.[2] After a subsequent motion for rehearing was denied, Wood filed a *pro se* petition for post conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The Supreme Court of Arkansas denied the petition.[3] Thereafter, Wood filed a petition for writ of habeas corpus before

the United States District Court for the Eastern District of Arkansas. The district court denied the petition on December 18, 1985.

On appeal, Wood contends that the Arkansas trial court denied him the fundamental fairness to which he is entitled under the due process clause of the fourteenth amendment by (1) improperly admitting his daughter's testimony concerning his and her incestuous relationship as relevant to his intent and motive to kill his son-in-law; (2) denying his motion for a change of venue, or alternatively, a continuance, despite the appearance, in a local newspaper, of an editorial comparing his plea of insanity with that of John W. Hinckley, Jr.; (3) failing to strike two potential jurors for cause which permitted an allegedly biased juror to serve on the jury; and (4) permitting the prosecutor to comment upon the alleged presumption of sanity under Arkansas law during the voir dire. We reject each of these contentions and affirm the district court's denial of habeas relief.

## II. DISCUSSION

We first address Wood's argument that the trial court's error in admitting his daughter's testimony regarding their incestuous relationship entitles him to habeas relief. The trial court overruled Wood's motion in limine and subsequently allowed Terry to testify, admonishing the jury that they were to consider the evidence for the limited purpose of proving intent and motive, as provided by the Uniform Rules of Evidence 404(b), Ark.Stat.Ann. § 28–1001 (1979). *Henry v. State*, 278 Ark. 478, 647 S.W.2d 419, *cert. denied*, 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983).

Questions relating to the admissibility of evidence are matters of state law and are generally not cognizable in an action for habeas corpus. *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50

---

**2.** *Wood v. State*, 280 Ark. 248, 657 S.W.2d 528 (1983).

**3.** The Arkansas Supreme Court did so in an unpublished opinion. *Wood v. State*, C.R. 83–85 (March 11, 1985).

L.Ed.2d 183 (1976). Nevertheless, a state court's evidentiary ruling will warrant the issuance of a habeas writ where the asserted error resulted in a denial of due process. *Id. See also Moore v. Wyrick,* 760 F.2d 884, 886 (8th Cir.1985). To prove such a denial, the evidentiary ruling must meet the standard we set forth in *Maggitt* of being so " 'gross', *Taylor v. Minnesota,* 466 F.2d 1119, 1121 (8th Cir.1972), *cert. denied,* 410 U.S. 956 [93 S.Ct. 1425, 35 L.Ed.2d 689] (1973), 'conspicuously prejudicial', *United States ex rel. Cannon v. Maroney,* 373 F.2d 908, 910 (3d Cir.1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California,* 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166] (1941)." 533 F.2d at 385. *See also Ellis v. Black,* 732 F.2d 650, 657 (8th Cir.1984).

■ Here we find no such error. Although we recognize the prejudicial nature of Terry's testimony, we agree with the Arkansas Supreme Court that absent that testimony, the jury could have attributed the killing solely to Wood's mental condition. *Wood v. State,* 280 Ark. 248, 657 S.W.2d 528 (1983). Thus the testimony bore directly upon the validity of Wood's defense of mental disease or defect and was highly relevant to the state's theory that Wood killed Winnett out of outrage over Winnett and Terry's reconciliation. We thus reject Wood's argument that the admission of Terry's testimony violated his due process rights.

■ In his second argument for habeas relief, Wood claims that, in light of pretrial publicity, the trial court's denial of his motion for change of venue or a continuance denied him his sixth amendment right to an impartial jury. Wood relies on the adverse publicity concerning his and John W. Hinckley, Jr.'s defense of insanity to their respective murder charges.

Six weeks before the start of Wood's trial, John Hinckley, Jr. was acquitted by reason of insanity of the March 31, 1981 shooting of President Reagan, James Brady, the President's Press Secretary, Timothy J. McCarthy, a Secret Service Agent, and Thomas K. Delahaney, a District of Columbia policeman. The acquittal spurred nationwide criticism of the insanity defense. One week before Wood's trial, on July 28, 1982, the *Baxter Bulletin,* the local newspaper, published an article entitled "Public won't forget", praising the trial judge's denial of Wood's pretrial motion to delay the trial, in light of the public uproar over Hinckley's acquittal. The editorial intimated the insanity defense allowed criminals to avoid paying their debt to society, portraying the insanity defense as simply a "replacement for responsibility."

The trial court expressly prohibited defense counsel from inquiring, during the voir dire, of the prospective jurors' reactions to the verdict in the Hinckley case. The trial judge held that such questioning would unduly prolong the voir dire, raise collateral issues and create problems in explaining the distinction between the law governing the Hinckley case and that governing Wood's case. *Wood v. State,* 280 Ark. at 250, 657 S.W.2d at 530. The trial judge did, however, permit defense counsel to question the jurors regarding their opinion of the insanity defense in general.

In *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), the Supreme Court considered a habeas petitioner's claim that pretrial publicity so infected his state criminal trial that it denied him his sixth amendment right to an impartial jury. In holding that no constitutional violation had occurred, the Court stated that a trial court's finding of impartiality might be overturned only for " 'manifest error.' " *Id.* at 1031, 104 S.Ct. at 2888 (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). In addition, the Court indicated that a " 'barrage of inflammatory publicity immediately prior to trial,' " *id.* 467 U.S. at 1033, 104 S.Ct. at 2890 (quoting *Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975)), "amounting to a 'huge ... wave of public passion,' " was needed to do so. *Id.*

467 U.S. at 1033, 104 S.Ct. at 2890 (quoting *Irvin,* 366 U.S. at 728, 81 S.Ct. at 1645).

After examining the record of the voir dire in this case, we cannot say that publicity surrounding the Hinckley case or Wood's trial denied Wood his right to an impartial jury. First, despite the large amount of publicity surrounding the Hinckley verdict only weeks before Wood's trial, the Hinckley case was too far removed from the specifics of the Wood case to have any appreciable effect upon the jurors' ability to decide impartially the merits of Wood's insanity defense. Second, the only known publicity of Wood's case were two editorials in the *Baxter Bulletin.* This hardly constituted a " 'barrage of inflammatory publicity', *Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975), amounting to a 'huge ... wave of public passion,' *Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961)". *Patton,* 467 U.S. at 1033, 104 S.Ct. at 2890. Finally, had publicity surrounding either trial greatly biased any of the jurors, defense counsel's questions during the voir dire concerning the jurors' opinion of the insanity defense would have elicited this bias, resulting in the juror's dismissal. We note that of the six jurors removed for cause, three were removed because of their personal feelings about the insanity defense.

Wood's third ground for habeas relief is the most serious. Wood contends that because of the trial judge's error in failing to excuse two prospective jurors for cause, a biased juror was impaneled in violation of Wood's due process rights. Wood claims that he would have used a peremptory challenge to strike this juror, but had exhausted his peremptory challenges striking the two prospective jurors who, he alleges, should have been excused by the court for cause.

The Supreme Court's decision in *Patton v. Yount* also involved a habeas petitioner's challenge to a trial judge's failure to dismiss a prospective juror for cause. The Court held that the question of juror impartiality was one of "historical fact" in which the presumption of correctness due a state court's factual findings under 28 U.S.C. § 2254(d) applied. 467 U.S. at 1036, 104 S.Ct. at 2891. Accordingly, the Court held that the only question on review is "whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." 467 U.S. at 1038, 104 S.Ct. at 2892.

On review of a habeas petition, we are limited to examining the responses of the impaneled juror for evidence of prejudice of constitutional magnitude.[4] We find ample evidence in the record to support the trial court's ruling that the impaneled juror was impartial. This juror, Joseph Lehman, is a twenty-year veteran of the Chicago Police Department. It was apparent, however, that his background did not bias his judgment. Lehman stated that his status as an ex-policeman would make him "more fair" to Wood (Tr. 617) and that he did not believe that the testimony of law

---

**4.** This precludes our consideration whether the trial court erred in refusing to dismiss two jurors for cause. We note here only the biased nature of the two jurors' responses during the voir dire. The first juror, Jane Snyder, stated twice that she had "probably" formed an opinion about the guilt or innocence of Wood (Tr. 460, 461, 468), answered that it would "probably" take some evidence to remove this predetermined conclusion from her mind (Tr. 468), and stated that she would "probably not" want herself as a juror were she the defendant. (Tr. 475). Although Snyder said she thought she could base her verdict solely upon the evidence when questioned by the trial judge (Tr. 469), such expressions were of questionable veracity in light of her replies to defense counsel.

The second juror, Douglas Oakes, stated that it seemed to him that Wood was guilty (Tr. 519), that the defense would have to present some evidence before he would change his mind (Tr. 529), that he would not feel comfortable with himself as a juror were he the defendant (Tr. 533), that trying to put his opinions aside was causing him difficulty (Tr. 534), and that (despite lengthy questioning) his original opinion as to the defendant's guilt was still working on him. (Tr. 535). He, like Juror Snyder, twice responded to the trial judge's questions in a more positive manner, stating that he "believed" he could set his predetermined opinions aside. (Tr. 530, 533).

enforcement officers should be given special weight when considering the evidence. (Tr. 620). Although Lehman expressed skepticism of the insanity defense, it was apparent that this opinion did not bias his judgment either. (Tr. 624). Lehman repeatedly assured defense counsel and the trial court that he would follow the law as instructed (Tr. 625), and that he could find the defendant innocent by reason of insanity if it were proved to him by a preponderance of the evidence. (Tr. 625). In light of Lehman's assurances, it is clear that the jury that ultimately tried Wood was unbiased, and we cannot accept Wood's argument that he was denied due process by the trial court's failure to excuse two jurors.

■ Wood's final argument, that comments made by the prosecutor during the voir dire denied him due process, must also be rejected. During the voir dire, the prosecution explained to several groups of prospective jurors that, because Arkansas law presumed all persons to be sane, the defense would be required to prove mental disease or defect by a preponderance of the evidence. Throughout the voir dire, however, the prospective jurors were exposed to a large poster on which defense counsel had copied the Arkansas Model Jury Instruction on the affirmative defense of mental disease or defect. *See* AMI Criminal 4009 (1979). The record reveals that defense counsel inserted Wood's name in the appropriate blanks in the instruction. (Tr. 413–14). Thus the pertinent part of the displayed instruction would have read, *"Harold Wood* has the burden of proving the defense by a preponderance of the evi-

dence, unless the defense is so proved by other evidence in the case. If you find that this defense has been established then you must find *Harold Wood* not guilty by reason of mental disease or defect." *Id.*[5]

We hold that the prosecutor's comments did not deny Wood due process. The prosecutor's comment that all men are presumed sane was essentially irrelevant to either party's burden of proof during trial. Under Arkansas law, as was clearly indicated by the jury instruction quoted on the displayed poster, mental disease or defect is an affirmative defense which the defendant must prove by a preponderance of the evidence. *Campbell v. State,* 265 Ark. 77, 576 S.W.2d 938 (1979). In light of Wood's burden to present evidence of mental disease or defect, it is difficult to see how a jury could be prejudiced by the prosecutor's comments. Wood fails to demonstrate that the prosecutor even misstated the law, let alone fatally infected the proceeding so as to render the entire trial fundamentally unfair. *Donnelly v. De-Christoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Batten v. Scurr,* 649 F.2d 564, 569 (8th Cir.1981).

### III. CONCLUSION

For the reasons stated above, we affirm the district court's denial of Wood's habeas petition.

---

**5.** The displayed poster contained the entire text of the jury instruction and thus would have read as follows:

    *Harold Wood* asserts the affirmative defense of mental disease or defect. If, after considering all the evidence, you are convinced beyond a reasonable doubt that *Harold Wood* engaged in the conduct alleged to constitute the offense charged [or some lesser offense], you should then consider the defense of mental disease or defect.

    A person is not criminally responsible for his conduct if at the time of that conduct, as a result of mental disease or mental defect, he lacked the capacity either to appreciate the

criminality of his conduct or to conform his conduct to the requirements of law.

    *Harold Wood* has the burden of proving the defense by a preponderance of the evidence, unless the defense is so proved by other evidence in the case. * * *

    If you find that this defense has been established then you must find *Harold Wood* not guilty by reason of mental disease or defect. Whatever may be your finding as to this defense, you are reminded that the state still has the burden of establishing the guilt of *Harold Wood* upon the whole case beyond a reasonable doubt.