Mark A. FREEMAN, Appellant,

v.

Robert ERICKSON, Appellee.

No. 92–3229.

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1993.

Decided Sept. 14, 1993.

Craig S. Davis, Minneapolis, MN, argued, for appellant.

Daniel Klint, Anoka, MN, argued, for appellee.

Before McMILLIAN, FAGG and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Mark Anthony Freeman, a Minnesota inmate, appeals from a final order entered in the District Court for the District of Minnesota,[1] denying his pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Freeman v. Erickson,* No. Civil 4–91–527 (D.Minn. Aug. 20, 1992) (order). Freeman was convicted in Minnesota of first and third degree criminal sexual conduct and was sentenced to 91 months in prison. The Minnesota Court of Appeals affirmed his conviction and sentence and the Minnesota Supreme Court denied his petition for review.[2] For reversal, Freeman argues that he was denied his right to confront witnesses against him when the state trial court excluded evidence regarding the victim's past sexual conduct. He also contends there was insufficient evidence to support his conviction. For the reasons discussed below, we affirm the order of the district court.

This is an acquaintance rape case. The victim was a 33–year–old single mother who lives with her son in Blaine, Minnesota. She worked as a secretary full-time and as a waitress part-time at a bar. While working at the bar, the victim met Freeman, when he came in as a patron. Subsequently, the victim saw Freeman three or four times at the bar and talked with him on the phone. They went on their first date one week before the rape occurred. Their second date was on January 31, 1990. Freeman and the victim made plans to go to T.R. McCoy's, a bar, for drinks. At the bar, they met two other couples. One hour later they went to another bar where they talked, danced, and drank some alcoholic beverages.

The victim asked Freeman to follow her home because they had all been drinking. When they arrived, the victim's son was sitting on the couch watching television. After a few minutes, he went to bed and left his bedroom door slightly ajar.[3]

At this point the parties' stories differ. The victim testified she got up and used the bathroom. Upon returning, she said Freeman asked if she wanted to go into the bedroom. She said "no," and laughed because she was not expecting that question. The victim testified that Freeman then hit her in the face, near the eye; grabbed her hard by the neck; pushed her down on the couch and hit her again; and grabbed her by the wrist, twisted it, and pinned it above her head. She then testified that Freeman removed her blue jeans and panties against her will and that Freeman had forced vaginal intercourse with her. The victim testifies that she did not scream during the attack because she did not wish to startle her son and she was scared Freeman would harm him.

Freeman testified that, after arriving at the victim's home, they began to "kiss and pet," which led to consensual sex. He testified that the victim did not say "no" or push him away. Freeman testified that, after having sex, the victim went to the bathroom and returned ten minutes later in a housecoat.

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota. United States Magistrate Judge Floyd E. Boline recommended that the writ for habeas corpus be denied. Freeman objected to the magistrate judge's report. The district court conducted a de novo review and adopted the recommendation of the magistrate judge.

2. *State v. Freeman,* No. C6–90–1462, 1991 WL 38188 (Minn.Ct.App. Mar. 16, 1991) (unpublished opinion), *review denied,* No. C6–90–1462 (Minn. May 16, 1991) (order).

3. His bedroom was next to the living room.

He testified she then asked him to leave and he left.

The victim testified that after the act she vomited and did not know what to do. She testified that she took a bath and called her brother and sister-in-law. She told her sister-in-law that she had been raped, and her sister-in-law advised her to call the police.[4] Next, she called James Ruid, her supervisor at her secretarial job, and told him she had been beaten.[5] Ruid called the victim back and told her he was coming over. When Ruid arrived at the victim's home, she explained that she had been raped. Ruid noticed marks on the victim's face, eye, neck, and wrists that were starting to turn black, and he advised the victim to call the police.[6]

The police interviewed the victim. They later showed her a photographic display and the victim selected Freeman's photograph from the display. Freeman was then arrested. Freeman admitted to the police that he had intercourse with the victim, but he stated that the sex was consensual and that he never forced her and never hit her.

In February 1990 Freeman was charged with one count of criminal sexual conduct in the first degree and one count of criminal sexual conduct in the third degree. At trial, the prosecution introduced into evidence the medical report pertaining to the medical exam the morning after the incident. The medical report was offered to establish how the victim described to the doctor how she sustained her injuries. Included in the medical report was a statement by the examining doctor that "the victim had vaginal intercourse two weeks ago." Freeman argued that he should be allowed to inquire into the victim's sexual history. Freeman's theory of defense was that their sexual contact had been consensual, and that the victim had been attacked by an unidentified third person, possibly a jealous boyfriend, whom the victim was trying to protect by falsely accusing Freeman of raping her.

The state trial court permitted Freeman to inquire into the victim's sexual history in two mid-trial *in-camera* hearings. During the hearings, the victim testified that her last sexual encounter prior to the incident occurred with a patron she knew only as "Andy." An investigator hired by Freeman located a patron of the bar named "Andy."

At this point, Freeman wanted to recall the victim to the stand and present these facts to the jury. He argued that this testimony would buttress his defense by suggesting the victim continued to conceal the truth about this matter to protect the person who had attacked her. The state trial court denied this request, ruling Freeman had not established the relevancy of the victim's prior sexual conduct on the issue of consent.

The jury found Freeman guilty of first and third degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(e)(i), .344, subd. 1(c) (1988). Freeman was sentenced to 91 months in prison. These convictions were affirmed on appeal.[7] Freeman then filed a pro se habeas corpus petition in federal district court, claiming the state trial court violated his confrontation rights by limiting cross-examination about the victim's past sexual conduct and denied him due process of law by switching the burden of proof to the defense and the evidence was insufficient to support the jury verdict. The district court reviewed the record de novo and adopted the report and recommendation of the magistrate judge denying Freeman's petition. This appeal followed.

## SIXTH AMENDMENT RIGHT TO CONFRONTATION

▮ Freeman first argues that his federal constitutional rights to due process and to confront witnesses were violated by limiting cross-examination of the victim about bias and motive for perjury. Freeman argues he "was prohibited from engaging in otherwise appropriate cross-examination designed to

---

4. The victim testified that she did not automatically call the police because she was confused and scared.

5. The victim did not tell Ruid she had been raped when she talked with him on the phone.

6. Shortly before 6:00 a.m., Ruid called the police.

7. Freeman has exhausted his available state remedies.

show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986), *citing Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). Freeman argues that, through cross-examination, he would have shown bias on the part of the victim and a motive for her to fabricate the rape charge against him.

■ We agree with the district court that the state trial court's limiting cross-examination of the victim about her past sexual conduct did not violate Freeman's sixth amendment right of confrontation. *Mercer v. Armontrout,* 844 F.2d 582, 587 (8th Cir.1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988); *Wood v. Lockhart,* 809 F.2d 457, 459–60 (8th Cir.1986). The tension here is between Rule 412 of the Minnesota Rules of Evidence and Freeman's federal constitutional right to confrontation. Under Minn.R.Evid. 412(1)(A)(i), inquiry into the victim's previous sexual conduct, absent a showing of a "common scheme or plan of similar sexual conduct under circumstances similar to the case at issue, relevant to the issue of consent," is strictly prohibited. Even with such a showing, the probative value of the evidence sought to be adduced must not be "substantially outweighed by its inflammatory or prejudicial nature."

Freeman principally relies on *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam) (*Olden* ), and *Wealot v. Armontrout,* 948 F.2d 497 (8th Cir.1991) (*Wealot* ), to support his arguments. Each case involved a rape charge and defenses of consent or fabrication.

In *Olden,* the defendant, who was black, was charged with the kidnapping, rape, and forcible sodomy of a white woman. In his defense, the defendant asserted that he and the victim had engaged in consensual sex, an account corroborated by several witnesses. 488 U.S. at 229, 109 S.Ct. at 481–82. The defendant argued that the victim fabricated the charge to protect her relationship with her married boyfriend, who would have grown suspicious upon seeing her emerge from the defendant's car. At the time of trial the victim had been living with her boyfriend who was black, yet she testified that she lived with her mother. The state trial court prevented cross-examination regarding the victim's living arrangements in order to protect the victim from "extreme prejudice."

The state appellate court acknowledged the relevance of the impeachment evidence but held that the defendant's right to effective cross-examination was outweighed by the danger that revealing the victim's interracial relationship would prejudice the jury against her. The Supreme Court held that the preclusion of this cross-examination of the victim's living arrangements was reversible because "[a] reasonable jury might have received a significantly different impression of the [witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Id.* at 232, 109 S.Ct. at 483, *citing Delaware v. Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1435–36.

In *Wealot,* the victim testified that she had been raped at knife-point by a male who had broken into her apartment. The police arrived but could not enter because the doors were locked. The screen of a large kitchen window had been slashed and the edges of the screen curled outward as if someone had exited through the window. The theories of defense were alibi and fabrication. At trial, the defendant sought to cross-examine the victim and her husband regarding their domestic relationship and whether or not the husband regularly locked the victim inside the apartment. In *Wealot,* there was no physical or medical evidence corroborating sexual intercourse. The only physical evidence of criminal activity was the slashed screen and broken window. We held that the limitation on cross-examination violated the defendant's confrontation rights because a reasonable jury might have received a different impression of the credibility of the victim, as well as that of her husband, had the defense counsel been permitted to show that the victim had a strong motive for falsely accusing the defendant. 948 F.2d at 500.

In the present case, extensive *in camera* hearings afforded Freeman every opportunity to establish the relevancy of his inquiry into the victim's past sexual conduct. Unlike the defendant in *Olden,* Freeman failed to establish that the victim was seriously involved with a third party, much less a jealous boyfriend. The Minnesota Court of Appeals observed that Freeman's evidence of a third party relationship "fell short of the evidence of the third party relationship presented by the appellant in *Olden." Freeman v. Erickson,* No. C6–90–1462, slip op. at 10, 1991 WL 38188 at *4. Unlike the defendant in *Wealot,* Freeman failed to substantiate his claim that the victim had a recent sexual relationship with a third party. Freeman's proposed cross-examination of the victim about her prior sexual history was not relevant. In addition, unlike *Wealot,* there was ample evidence corroborating the victim's testimony that Freeman had beaten and raped her.

## SUFFICIENCY OF EVIDENCE

Freeman also argues there was insufficient evidence to support the jury's guilty verdict. Freeman contends that in light of the victim's alleged lying to the police and to the state trial court about her past sexual conduct with "Andy," whether she knew his last name or telephone number, whether she knew where her underpants went, and whether Freeman had a mustache, the testimony of the victim should be disregarded. In reviewing a claim that the evidence was insufficient to support a state conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Berrisford v. Wood,* 826 F.2d 747, 754 (8th Cir. 1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988).

The Supreme Court in *Jackson* made clear that a state appellate decision as to the sufficiency of the evidence is entitled to some deference. *Jackson v. Virginia,* 443 U.S. at 323, 99 S.Ct. at 2791. Here, we agree with the state courts and the district court that there was sufficient evidence to support the jury's verdict. The evidence consisted of detailed testimony by the victim, which was corroborated by her physical injuries, the medical report, photographs taken of her injuries, police reports, testimony of friends with whom the victim and Freeman met before the rape, and testimony of her work supervisor. We conclude that a rational trier of fact could have found all the elements of the charged crime beyond a reasonable doubt in light of all the evidence.

Accordingly, we affirm the order of the district court.