**UNITED STATES of America, Appellee,**

v.

**Daniel Lamar FORD, Appellant.**

**No. 93–1220.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1993.

Decided March 29, 1994.

Order Denying Rehearing and Suggestion for Rehearing En Banc May 13, 1994.

Order Vacating Order Denying Rehearing and also Denying Rehearing and Suggestion for Rehearing En Banc June 21, 1994.

Deborah Ellis, St. Paul, MN, argued, for appellant.

Margaret Burns, Minneapolis, MN, argued (Francis X. Hermann and Margaret T. Burns, on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Daniel Ford was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 210 months imprisonment. He appeals both his conviction and sentence. We affirm.

Ford broke into a convenience store and triggered a silent alarm. Two police officers who responded to the alarm said Ford fired at them and fled, at which point the officers shot and wounded him. Ford admitted he broke into the store but denied having a gun, claiming that the police planted the gun. Charges were brought against Ford for being a felon in possession of the gun that was found next to him after he was shot by the police.

I.

Ford challenges his conviction on three grounds. He first asserts the district court denied him the presumption of innocence necessary to a fair trial when it refused to excuse a juror who briefly saw him handcuffed in the courthouse stairwell and escorted by two U.S. marshals. This incident occurred midway through the trial. One marshal told the judge he did not know whether the juror identified Ford, because as soon as the two marshals saw the juror, they stepped in front of Ford and tried to block any view of him. III Tr. 3.

Ford has the burden of demonstrating prejudice from the juror's brief, inadvertent exposure to him in custody. *See United States v. Robinson*, 645 F.2d 616, 617 (8th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981); *United States v. Jackson*, 549 F.2d 517, 527 n. 9 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Ford's counsel told the trial judge about the incident shortly after it occurred but did not request that the juror be interviewed to see what she actually saw and whether any prejudice resulted. Counsel rejected the court's offer to summon the juror to the bench and its offer to give an instruction either to the jury panel as a whole or to this particular juror. III Tr. 8. Defense counsel passed up the opportunity to investigate and develop a record, and we conclude that Ford has not carried his burden of demonstrating prejudice from the incident.

Ford next contends he was deprived of a fair trial when the court denied his motion for a change of venue. The motion was made prior to voir dire and was based on the pretrial publicity surrounding an unrelated case in which several black males were charged with the murder of white police officer Jerry Haaf. Ford is black, and the police officers who shot him are white. Ford requested that the trial be moved either outside the District of Minnesota or to another division within Minnesota, such as Duluth.

The district court gave several reasons for denying the motion. The court indicated it planned to explore during voir dire whether

the prospective jurors harbored any prejudice about black people in general or in the context of shootings involving police officers. The court also pointed out that the prospective jurors were selected from a very wide area in Minnesota and that the story of Officer Haaf's shooting probably received as much exposure in the neighboring districts of North Dakota and South Dakota as it did in the areas of Minnesota outside the Twin Cities. Finally, having noted that the names of prospective jurors were taken from both driver's license and voter registration lists, the court concluded that moving the trial out of the Twin Cities area would likely decrease the odds that the prospective jurors would include members of minority groups or others sensitive to the position of a black defendant, without a corresponding decrease in the level of publicity about the shooting of Officer Haaf. I-A Tr. 20, 27–29.

The record of the voir dire shows that the court asked the prospective jurors about their knowledge of the Haaf killing and their attitudes about and experiences with black people, firearms, and the police. After voir dire Ford did not renew his motion for a change of venue, nor has he presented to us any evidence of actual juror prejudice. *See United States v. Grey Bear*, 883 F.2d 1382, 1393 (8th Cir.1989) (court is not required to grant change of venue absent evidence of actual juror prejudice), *cert. denied*, 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).

The only common denominator between this case and the Haaf killing is white police officers and black defendants. This is insufficient to require a change of venue given the specific questioning during voir dire and the fact that there was no speculation in news reports that Ford was linked to anyone involved in the killing of Officer Haaf. *See Wood v. Lockhart*, 809 F.2d 457, 460–61 (8th Cir.1987) (denying a change of venue to defendant raising insanity defense weeks after John Hinckley's acquittal on insanity grounds of assassination attempt on president provoked widespread public criticism of insanity defense). We find no error in the district court's denial of Ford's motion for a change of venue.

■ There is likewise no merit to Ford's objection that the government proved his prior convictions at trial rather than accepting his offer to stipulate to them. The government is entitled to introduce evidence of previous felony convictions notwithstanding a defendant's offer to stipulate to his status as a felon. *United States v. Amerson*, 938 F.2d 116, 119 (8th Cir.1991).

## II.

Ford also appeals his sentence of 210 months imprisonment. The district court found that Ford had three prior violent felony convictions, which made him subject to a fifteen-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). The court applied the armed career criminal provision of the sentencing guidelines. U.S.S.G. § 4B1.4. The court found an offense level of 33 and a criminal history category V, resulting in an imprisonment range of 210 to 262 months.

Ford first contends that two of his prior felony convictions should not have been considered by the district court. He admits all three of his prior violent felonies—a 1977 burglary and aggravated robberies in 1981 and 1984—but claims that the 1977 and 1981 convictions should not be used to enhance his sentence under section 924(e)(1) because he received insufficient notice upon restoration of his civil rights that he could not legally possess a firearm. *See* 18 U.S.C. § 921(a)(20) (conviction for which civil rights have been restored shall not be considered a conviction for purposes of this chapter unless the restoration expressly provides that the person may not ship, transport, possess, or receive firearms).

■ After each conviction Ford received a Certificate of Discharge and Restoration of Civil Rights. The certificates for the 1977 and 1981 convictions stated that "this certificate does not relieve you of the disabilities imposed by the Federal Gun Control Act." Ford's argument that this statement provides inadequate notice is foreclosed by this court's decision in *United States v. Davis*, 936 F.2d 352, 357 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). In *Davis* the court considered a discharge order with the exact same language as Ford's certificates for the 1977 and 1981 convictions. The court concluded that the language referring to the Federal Gun Control Act constituted "explicit

notice" that the restoration of civil rights did not include the right to "ship, transport, possess, or receive firearms." *Id.*

Ford also challenges the eleven criminal history points assigned to him, which put him in category V (ten to twelve points). The armed career criminal provision of the sentencing guidelines requires a minimum of category IV. U.S.S.G. § 4B1.4(c). Ford argues that the court made three errors in calculating his criminal history points. He needs at least a two-point reduction, from eleven to nine points, to fall into category IV (seven to nine points) and be eligible for a lower range of imprisonment.

■ Ford first claims that only two rather than three points should have been assigned to his 1977 burglary conviction because Ford served only ten months of his three-year sentence.[1] However, the guidelines say that three points are assigned for "each prior sentence of imprisonment exceeding one year and one month." *Id.* § 4A1.1(a). "Sentence of imprisonment" is defined as "a sentence of incarceration and refers to the maximum sentence imposed." *Id.* § 4A1.2(b)(1). "If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." *Id.* § 4A1.2(b)(2). Ford's term of incarceration for the 1977 burglary was three years, and the sentence was not suspended. The court correctly added three points for this conviction to Ford's criminal history score.

■ Ford next argues that the court erred when it added one point under section 4A1.2(c) of the sentencing guidelines for his 1988 conviction for driving under the influence, because the record did not show whether Ford had counsel. Although a majority of this panel would agree that uncounseled misdemeanor convictions may not be counted when calculating a criminal history score, we are bound by the contrary conclusion announced in a recent en banc decision of this court. *See United States v. Thomas,* 20 F.3d 817 (8th Cir.1994). Thus the district court did not err in adding one criminal history point for this conviction.

Ford's final argument is that the court should not have assessed one point for his 1991 petty misdemeanor conviction for marijuana possession. We do not need to address this argument because of our rejection

of his two previous arguments. Even if we deducted this point from his criminal history score of eleven, Ford would remain in category V (ten to twelve points) and thus in the same range of imprisonment.

For the foregoing reasons, we affirm Ford's conviction and sentence in all respects.

### Order Denying Petition for Rehearing and Suggestion for Rehearing En Banc

#### May 13, 1994

The suggestion for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

### Order Denying Petition for Rehearing and Suggestion for Rehearing En Banc

#### June 21, 1994

This court's order of May 13, 1994, is hereby vacated. The suggestion for rehearing en banc is denied. Chief Judge Arnold and Judge Morris Sheppard Arnold would grant the suggestion, limited to Ford's first reason for granting rehearing en banc on which a decision of this court is in conflict with the decision of another circuit.

The petition for rehearing by the panel is also denied.

---

**1.** The government's brief incorrectly states that Ford failed to raise this issue at sentencing and therefore waived it. *See* Govt.Br. at 17; Sent.T. 14–15.