# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos.  97-2792/97-2794
_____

| | |
|---|---|
| United States of America | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * Appeals from the United States |
| Lorry Van Chase | * District Court for the District |
| | * of |
| Defendant-Appellant. | * North Dakota. |
| | * |
| United States of America | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Bobby LaVallie, a/k/a Bobby Bercier, | |
| | |
| Defendant, Appellant. | |

_____

Submitted: December 9, 1997
Filed:  February 25, 1998
_____

Before McMILLIAN, MAGILL, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Lorry Van Chase and Bobby LaVallie were each convicted after a jury trial of kidnapping, 18 U.S.C. §§ 1153, 1201(a)(2); assault with intent to do bodily harm, 18 U.S.C. §§ 1153, 113(a)(3); and use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). They were each sentenced by the district court[1] to 130 months. On appeal they seek a new trial because of certain evidentiary rulings, comments by the court during voir dire, and an encounter between a juror and LaVallie during trial. Van Chase asserts in addition that the charges against him should be dismissed for lack of a speedy trial and that his sentence should not have been enhanced for a leadership role.

Van Chase and LaVallie are enrolled members of the Turtle Mountain Band of Chippewa Indians, as is Jerelyn LaFountain. After LaFountain broke off a relationship with Van Chase, he continued to pursue her at her workplace and at her home in Belcourt, North Dakota on the Turtle Mountain Indian Reservation. At about 5 a.m. on May 17, 1996 he and LaVallie went to her house and banged on the door. Both men had previously been seen at a party where they stayed until about 4 a.m. and where Van Chase had been drinking from a large bottle of whiskey.

When La Fountain came to the door, Van Chase and LaVallie forced their way into the house. Each was carrying a gun. Van Chase told LaVallie to check if anyone else was in the house and then demanded that LaFountain leave with them. When she refused repeated demands to accompany them, Van Chase punched her, pointed his gun at her children, and threatened to kill them. She yelled for the intruders to leave, but Van Chase told her to "shut up or you will watch your kids die." Van Chase and LaVallie threatened her with their guns and a kitchen knife and began to hit her. Van

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

Chase ordered LaVallie to grab LaFountain and they then dragged her out of the house, punching her as they went. They got into Van Chase's truck, and he told LaVallie to knock her out. They drove off with LaVallie at the wheel and Van Chase holding LaFountain down. Van Chase poked LaFountain with a knife and told her to keep quiet, that she "was going to die," and that he was "going to bury" her. When LaFountain saw they were passing her cousin's house, she slammed the brakes on the truck and grabbed the steering wheel, but Van Chase punched her in the eye and split it open.

The three drove on to Van Chase's house which was outside the reservation. At the house Van Chase again pointed his gun at LaFountain and threatened to kill her before dragging her out of the pickup by her hair. LaFountain protested that she was cold and had no shoes. Van Chase told LaVallie to give her shoes and a coat to wear and a rope and ski mask to carry, and threatened to "blow her away" if she dropped them. As they moved towards a wooded area, LaFountain used the ski mask to clear blood from her eye and heard Van Chase tell LaVallie, "I ain't going to fuck this bitch. I'm going to kill her." They arrived at a spot where she saw a supply of liquor and cigarettes and a black dufflebag. Van Chase told LaFountain to look inside the bag because her ex-boyfriend's head was in it, but she declined. Van Chase then ordered LaFountain to sit on a car hood in an adjacent area cluttered with junk. He fired his gun into the hood and told her that "that could have been your head." LaFountain expressed concern about her children, and Van Chase ordered LaVallie to go get them. While LaVallie left to return to the reservation in the pickup to collect the children, Van Chase and LaFountain returned to the house. Van Chase gave LaFountain a sweatshirt and pants to put on, and she discarded her nightshirt on the floor.

LaVallie returned with the children and left again when Van Chase instructed him to hide his gun, and Van Chase and LaFountain went back to her house on the reservation. LaFountain then took Van Chase's truck because her car would not start.

After dropping her children off at a friend's house, she drove to the hospital to have her injuries treated and then to the police station to report what had happened.

State police obtained and executed a search warrant for Van Chase's house and the surrounding property later that day. There they found LaFountain's nightshirt and the ski mask she had carried. Both had blood on them which DNA tests showed to be consistent with her blood. In a nearby grove of trees they found a black dufflebag and a cache of liquor and cigarettes. They also found boards in which nails had been driven and several spent shotgun shells. The FBI later obtained and executed a federal search warrant for Van Chase's pickup. Hair samples and scrapings of dried blood were taken. DNA tests showed the blood to be consistent with LaFountain's, as were the hair samples which had been ripped from the scalp.

Van Chase and LaVallie argue on appeal that they are entitled to a new trial because evidence of events that took place off the reservation should not have been admitted. Federal jurisdiction over the kidnapping and assault charges arises under 18 U.S.C. § 1153 for specific crimes committed by an Indian in Indian country. They argue that evidence of acts committed elsewhere than in Indian country should therefore not have been admitted. They also claim for the first time on appeal that these acts were other crimes evidence inadmissible under Federal Rules of Evidence 404(b) and 403.

Evidentiary rulings of the district court are reviewed for abuse of discretion. U.S. v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996). Appellants claim that acts off of the reservation were inadmissible for lack of jurisdiction. Jurisdiction over an offense under 18 U.S.C. § 1153 exists if any portion of the crime takes place within Indian country. See U.S. v. Torres, 733 F.2d 449, 460 (7th Cir. 1984). There was sufficient evidence here of acts within the reservation boundaries to make out each element of the offenses. While on the Turtle Mountain Reservation, Van Chase and LaVallie forcefully took La Fountain from her home against her will, see 18 U.S.C. § 1201(a),

-4-

and repeatedly punched her and threatened her with guns, see 18 U.S.C. § 113(a)(3), 18 U.S.C. § 924. This behavior continued as they moved off the reservation. The entire brutal sequence was not interrupted by the reservation boundary and amounted to a single course of conduct. That portion of the events that took place off the reservation was admissible to show the context of the charged crimes, U.S. v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997), and it was an integral part of the whole story not inadmissible under Rule 404(b) simply because it was criminal in its own right. U.S. v. Williams, 95 F.3d 723, 731 (8th Cir. 1996).

Van Chase and LaVallie based their defense at trial on the theory that LaFountain had fabricated her story. Her testimony regarding the cache of cigarettes and liquor near Van Chase's house and the items she left there (the bloodied ski mask and abandoned nightshirt) was corroborated by physical evidence obtained from the searches of Van Chase's house and pickup and was relevant to rebut the defense theory that she made up her story. The evidence was relevant to present a coherent picture of what had occurred, as well as the intent and motive of the defendants, Williams, 95 F.3d at 731, and its probative value was not substantially outweighed by any prejudicial affect. The district court did not abuse its discretion in admitting the evidence.

Appellants also contend that they are entitled to a new trial based on comments made by the court during voir dire which they say suggested bias against Native Americans and characterized La Fountain as a victim. During an exchange with the venire panel the court stated that, "[w]e have--we have some problems with racial discrimination. We just do. Some people have unarticulated bias; others are a little more open. I have found racial bias to be a double-edged sword. I have found some people willing to believe something bad about a minority and, therefore, willing to convict. I have found others willing to take the position that, 'Ah, it's just a bunch of Indians beating on each other and why should we convict them." The court then asked, "[d]o you think you can be fair and impartial and not go one way or the other because of racial status or reservation situs?" Later it asked if any venire member was bothered

by jurisdiction based on "Indian status or reservation locale." It commented that some people "don't seem to think that a Native American victim is entitled to the same safeguards and protections as a non-Indian" while others "would convict because of racial status and Federal court jurisdiction, whereas they might not were the matter brought in state court."

Neither Van Chase nor LaVallie objected to these statements at the time of trial so our review is for plain error. U.S. v. Wonderly, 70 F.3d 1020, 1024 (8th Cir. 1995). The district court has broad discretion in conducting voir dire in order to seat an impartial jury. Rosales-Lopez v. U.S., 451 U.S. 182, 189 (1981). Its comments sought to alert the venire members to possible bias against Native Americans and to excuse anyone who might not be able to set aside such attitudes. When viewed in their full context we cannot say they constituted plain error. See U.S. v. Lueth, 807 F.2d 719, 727 (8th Cir. 1986).

Appellants also complain that during the course of trial one of the jurors saw LaVallie in restraints in the custody of a deputy. The court informed counsel outside the presence of the jury that a deputy had inadvertently led LaVallie onto an elevator with a juror in it, and a hearing was held to discuss how to handle the issue. Appellants moved for a mistrial and objected that voir dire of the juror and an admonition not to consider the encounter or discuss it with other jurors would not be sufficient to guard against any prejudice. Van Chase also moved for a severance. The court denied the motions, and the trial continued. Immediately after the jury returned its verdicts, the court conducted a voir dire of the juror who had seen LaVallie in restraints. The juror reported that she had assumed LaVallie had not been able to post bond, that she had mentioned seeing him to the other jurors in a discussion about the appearance of the defendants, and that none of this had had any impact on the verdict.

Van Chase and LaVallie have the burden to demonstrate that they were prejudiced by the juror's brief exposure to LaVallie in restraints. U.S. v. Ford, 19 F.3d

1271, 1272 (8th Cir. 1994).  The decision to deny the motions for a mistrial should be reversed only if it was an abuse of discretion that clearly prejudiced appellants.  U.S. v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996). Appellants bypassed an opportunity to demonstrate that they were prejudiced by expressly rejecting an opportunity to voir dire the juror.  See Ford, 19 F.3d at 1272.   They also specifically requested the court not to give an instruction to the juror admonishing her not to consider the encounter or to discuss it with the other jurors.  The mere fact that a juror had a brief view of a defendant in custody is not sufficient to establish there was sufficient prejudice to warrant a new trial.  U.S. v. Gayles, 1 F.3d 735, 739 (8th Cir. 1993). The defendants have not demonstrated that they were prejudiced by the encounter or that the denial of their motion for mistrial was an abuse of discretion.

Van Chase argues that his case should be dismissed because his right to a speedy trial under 18 U.S.C. § 3161 was violated.  He contends that two continuances granted by the court for testing of blood and hair samples were not necessary because the samples were not obtained from the reservation and were therefore irrelevant and not important to the government's case.  The Speedy Trial Act explicitly provides that a claim under it must be asserted by seeking dismissal prior to trial or it is waived.   18 U.S.C. § 3162(a)(2).  Even if Van Chase had not waived the issue by failing to make such a motion, however, the delay caused by the continuances was excludable time under § 3161(h)(8)(A).  See U.S. v. Drapeau, 978 F.2d 1072, 1073 (8th Cir. 1992).  The continuances were needed due to a testing backlog at the FBI labs that prevented the prosecution from obtaining the results regarding the blood and hair samples for several months after they were submitted, and this evidence was relevant to rebut the attack on LaFountain's credibility. The district court specifically found that the ends of justice were best served by the continuances after balancing the competing interests.  It concluded that the elapsed time was therefore excludable under the statute, and Van Chase has not shown that it erred.

Van Chase also argues that he is entitled to resentencing because he received an improper two level enhancement for his leadership role in the offense. He argues that there was no evidence that he ordered LaVallie to do anything he was not otherwise willing to do. A leadership enhancement is warranted when an individual organizes or directs the participation of another, U.S.S.G. § 3B1.1, and is reviewed for clear error. <u>U.S. v. Edwards</u>, 91 F.3d 1101, 1104 (8th Cir. 1996). There was considerable evidence to support the court's finding that Van Chase gave directions to LaVallie during the commission of the crimes. For example, Van Chase repeatedly instructed LaVallie to punch LaFountain and directed him to give her his shoes and a coat, to run errands, to pick up her children, and to hide his gun. The district court did not err in imposing the two level enhancement.

Appellants have not shown that they are entitled to a new trial, to dismissal of any charges, or to resentencing, and the judgments of the district court are affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.